## LEE BIRD v. STATE.

No. A-3934.   Opinion Filed Dec. 13, 1922.
(210 Pac. 925.)

(Syllabus.)

1. **Trial—Instructions and Modifications to Be in Writing.** Our Statutes (sections 5870, 5007, 5905, and 5913, Rev. Laws 1910) doubtless contemplate that all instructions to juries shall be in writing, including any material changes or modifications made during the deliberations of the jury.

2. **Appeal and Error—Verdict not Disturbed for Oral Explanations not Materially Altering Instructions.** If oral explanations by the court are made which do not materially alter the written instructions, and which have no tendency to confuse the jury, the verdict should not be disturbed.

3. **Trial—Instructions Partly Written and Partly Oral Disapproved.** Instructions partly in writing and partly oral should be avoid-

ed.   Such practice is likely to be confusing to both the jury and the appellate court charged with passing upon their sufficiency.

4.   **Same—Waiver of Statutory Right to Have Jury Instructed in Writing.**   The statutory right to have the jury instructed in writing may be waived even in criminal cases.

5.   **Appeal and Error—Harmless Error—Unauthorized Inspection of Scene of Crime by Part of Jury.**   Where, before final submission, the jury were permitted to separate, and three jurors without permission inspected the place where the homicide took place, and where the whole panel, after submission, with the consent of the court, inspected the place, such irregularity will not operate as a reversal where nothing prejudicial appears.

Appeal from District Court, Oklahoma County; Geo. W. Clark, Judge.

Lee Bird was convicted of manslaughter in the first degree, and he appeals.   Affirmed.

Pruiett, Sniggs, Patterson & Morris, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J.   Plaintiff in error, Lee Bird, in this opinion referred to as the defendant, and A. Bird, the deceased, were brothers.   The defendant was 65 years of age, and the deceased brother was about 70.   It appears that the fatal tragedy grew out of a misunderstanding or dispute concerning their business affairs.   Both men were engaged in the produce business in Oklahoma City, and at the time of the homicide they were occupying the same business building.   For years prior to this time they had been in business, sometimes jointly and sometimes separately.   At this time they were transacting business separately, but jointly using the same business building.

On the morning of the homicide the defendant, upon going to his place of business, found the front doors of the building locked with a new spring lock. After trying to gain entrance through the front doors, and failing, the defendant went to the rear, where the deceased refused to permit him to enter. According to the testimony of the defendant, the deceased brother threatened to kill him if he forced an entrance. The defendant then went to a hardware store, purchased a revolver, and in the course of about two hours returned to the building and broke a large glass panel in the front door by striking it with a borrowed hammer. The deceased then approached this opening in a threatening manner, with a hatchet in his hand. The defendant thereupon fired four or five shots, one of which struck the deceased, penetrating his body and causing almost instant death.

The killing was admitted, and the accused pleaded justification in his necessary self-defense.

The errors complained of may be treated under two subdivisions:

First. That the court erred in giving verbal instructions to the jury during the course of their deliberations.

Second. Misconduct of jurors, in that three jurors, without leave of court, visited and inspected the scene of the tragedy during the progress of the trial, before the issues were finally submitted to the jury.

After the jury had deliberated some hours, they were by the bailiff brought into court. Here the record shows the following:

"The Court: Gentlemen of the jury, the court understands you desire to ask a question.

"A Juror: Your honor, there is two or three questions that the jury would like to be informed on. The first one is:

What constitutes 'reasonable doubt'? Shall I read them all now?

"The Court: You might read the rest of them.

"A Juror: What constitutes 'unnecessary killing' or murder, and what time the Frisco is supposed to leave on the morning of the killing.

"The Court: Have the parties plaintiff or defendant, or are the parties plaintiff and defendant willing that the court should answer the first question, as to what is meant by reasonable doubt?"

There being no objection, the court proceeds as follows:

"The Court: In answer to that question, the court will say that the statutes of this state that were adopted by the Legislature some ten years ago defined 'reasonable doubt.' That definition was given to the jury in a criminal case, following the exact language of the statute. The defendant appealed from a verdict of conviction in that case. The Criminal Court of Appeals, speaking through Chief Justice Furman, said that that is not the law of this state, and that the Constitution and the Bill of Rights of this state are of such import that the definition of reasonable doubt, as given by the statute, was not a legal enactment, and was not binding, and that if courts did not desire to have convictions reversed they must refrain from giving that definition. I take it that the meaning of the court in speaking in that way is that no plainer language could be used to express the meaning sought to be conveyed by those words, 'reasonable doubt.'

"Mr. Morris: Give us an exception to the remarks at this time. I don't want to get up there before the jury objecting (This to the reporter.)"

The court then read to the jury from an opinion of this court by Justice Furman, to the effect that the term "reasonable doubt" was a term easily understood, but difficult to define, and that any definition given would be more likely to confuse than elucidate the meaning of the term. This, in

our opinion, constituted.no additional instruction to the jury. It was simply an explanation why no instruction on reasonable doubt had been given, and why such an instruction should not be given.

The court then proceeded to explain the next question asked by the jury, as to the meaning of the term "unnecessary killing" or "murder." The court reread a portion of instruction No. 6, defining "murder," and then made the following observations:

" * *.* While a homicide that is perpetrated by means of a dangerous weapon, in a heat of passion, but without a design to effect death, is manslaughter in the first degree, it does not constitute murder; it is manslaughter in the first degree, unless committed under such circumstances as constitute justifiable homicide. Now, gentlemen, this second question you have, as to what is meant by unnecessary killing."

The court then reread his instructions relating to unnecessary killing, manslaughter, and justifiable homicide. After the court read the instructions on justifiable homicide the court said:

"I am inclined to think that that is about as clear as it could be stated. An act that is justifiable is not criminal. It is for you to say whether the facts as disclosed upon the trial bring the acts that were alleged to have been done, and which were done, within the definition of these offenses."

After rereading of some other instructions, the court said:

"In answer to your second question, as to the meaning of 'unnecessary killing,' which really refutes, if that were true, the claim upon which the defendant is basing his right to act as he did under the circumstances as he viewed them, that the deceased was about to kill him or to do him some great personal injury, in order to convict him, as explained in the

instructions, of the crime of manslaughter in the first degree, if such were the facts, you must find that, viewing the situation from his standpoint, there was no reasonable ground upon which he could believe that his brother was about to do him some great personal injury at that time.''

While ordinarily we do not mean to approve of the giving of oral explanations of written instructions, pending the deliberations of the jury, yet under the circumstances here, where there were no specific objections to the giving of oral explanations, and where the explanations given did not amount to a material modification of the written instructions, the irregularity will be considered as waived. The defendant, at the conclusion of the remarks of the court, made this objection: ''Give us an exception to all these remarks of the court''— for what particular reason is not stated. The exception was allowed. The only other objection interposed to any of these proceedings was while the court was commenting on ''reasonable doubt,'' as hereinbefore quoted.

Upon the question of waiver or loss of the right to written instructions, or upon the question of oral modifications or explanations of written instructions, the courts are not in complete accord. In the following cases immaterial oral additions to written instructions have been held harmless: National Lumber Co. v. Snell, 47 Ark. 407, 1 S. W. 708; O'Donnell v. Segar, 25 Mich. 369; Currie v. Clark, 90 N. C. 355; Continental Nat. Bank v. Folsom, 67 Ga. 624; Fry v. Shehee, 55 Ga. 208. In many states it has been held that the statutory right to have the jury instructed in writing may be waived even in criminal cases. For a more complete discussion of this feature of the case, see section 51, vol. 1, Blashfield's Instructions to Juries, and cases and notes there cited.

Our statutes (sections 5870, 5007, 5905, and 5913, R. L. 1910) doubtless contemplate that all instructions shall be in

writing, including any material changes or modifications made during the deliberations of the jury. But, if oral explanations by the court are made, which do not materially alter the written instructions, and which have no tendency to confuse the jury, or if the complaining party waives or fails to make proper and timely objections to oral explanations, the verdict should not be disturbed. Particularly is this true where, as in this case, the record as a whole shows a clear case of deliberate murder, or at least that the killing was cruelly and unnecessarily.done in the heat of passion, by means of a deadly weapon. The defendant's punishment was fixed at the minimum for manslaughter in the first degree, while the evidence would have supported a verdict for murder. Under such circumstances a new trial should not be granted unless it clearly appears that the defendant was deprived of some fundamental statutory or constitutional right, to his prejudice. In our opinion the instructions given, with the oral explanations made as here appears, constituted no such error. However, instructions partly in writing and partly oral should be avoided. Such practice is likely to be confusing to both the jury and the appellate court charged with passing upon their sufficiency. The better practice is to reduce all explanations and modifications to writing.

As to defendant's objection that three jurors visited the scene of the homicide during the progress of the trial, before final submission, it also appears that, after submission, on request, the whole panel was taken to the place to inspect the premises. Nothing was shown to have taken place that was prejudicial to the rights of the defendant; these three jurors saw nothing more, and obtained no more material information than was imparted to all the rest of the jurors. The fact that one Julius Stumpf pointed out the building to these three jurors, and told them that defendant and deceased "had

trouble off and on ever since they had been over there" (at that location), was to a large extent supported by evidence of witnesses in court. We do not see that this remark was prejudicial; indeed, it may have inured to the benefit of the defendant, as being in support of his claim of justification in self-defense, tending to show that the deceased was sometimes quarrelsome.

By consent of the parties the jury, before final submission, were permitted to separate, and the conduct of the three jurors in visiting the scene of the tragedy, though technically improper, was innocently done; and, since the other jurors by permission of the court also viewed the premises, in the absence of any showing of corrupt or improper reception of testimony out of court, a verdict of manslaughter will not, for that reason alone, be disturbed.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.