## J. BRUNDRIDGE MILAM v. STATE.

No. A-4060. Opinion Filed Aug. 18, 1923.
(218 Pac. 168.)

(Syllabus.)

1. **Preliminary Examination—Authority of Ex Officio Judge of City Court.** A preliminary examination, held by an ex officio judge of the city court of Muskogee, held sufficient.

2. **Robbery—Instructions as to Motive or Intent—Sufficiency.** The original written instructions given concerning the motive or intent to rob were sufficient.

3. **Trial—Instructions Asked for During Jury's Deliberation—Requisites.** Oral instructions given, after submission of the cause to the jury, during the jury's deliberations, held improper and misleading.

   (a) After a cause is submitted to the jury if the jurors ask for further instructions, and the court deems it proper, additional instructions may be given. These should be reduced to writing, and filed in the same manner as the original instructions.

Appeal from District Court, Muskogee County; Benjamin B. Wheeler, Judge.

J. Brundridge Milam was convicted of robbery, and he appeals. Reversed, and remanded for new trial.

T. H. Davidson, for plaintiff in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. J. Brundridge Milam, plaintiff in error, in this opinion designated the defendant, was by information

filed January 6, 1921, charged with having, on the 4th day
of December, 1920, committed the crime of robbery, by tak-
ing from the person of Guy Roberts, by means of force and
fear, a certain watch and chain. At the trial, February 17,
1921, by a verdict of the jury he was found guilty of rob-
bery in the first degree, and his punishment fixed at impris-
onment in the state penitentiary for a term of 10 years. From
the judgment rendered on this verdict, he appeals.

The evidence on the part of the state, as shown by Guy
Roberts, the injured party (who was in fact not injured, as
will be disclosed herein), was to the effect that Roberts, at
the time of the alleged offense, was in the employ of the Ok-
lahoma Gas & Electric Company at Oklahoma City, and was
in Muskogee on business for this company, having a room
at the Cardinal Rooms, that in this rooming house there was
a wide hall or waiting room connecting with some of the
rooms, and that witness first saw the defendant standing in
the doorway of room No. 9, while witness was standing in
this hallway. The defendant stood in the open door of his
room and beckoned several times to the witness to come
to the room; eventually the witness stepped to the door and
the defendant invited him to come inside; witness stepped
into the room, where he found two companions of the de-
fendant, somewhat under the influence of liquor, and the
defendant himself considerably under such influence. The
defendant asked the witness to pour some whisky which he
had in a jug into some small bottles, stating that he (the
defendant) was too nervous to do it. At first the witness
refused to do this, whereupon the defendant picked up a
pistol and asked the witness why he would not pour the
whisky; the witness replied that he did not want to have
anything to do with it. The defendant again told him that
he was too drunk to do it, and at the point of a pistol forced

the witness to pour the whisky into the small bottles. The witness stated that after some argument the defendant began to suspect that witness was an officer, and in his crazy, drunken condition continued to be mean and humiliate the witness. Finally the defendant noticed that the witness had a watch and chain, and defendant, apparently in a joking way, stated that it looked to him like a pretty nice watch and ordered the witness to take it off and throw it on the bed. The witness, through fear of the defendant in his drunken condition, with a gun in his hand sometimes pointed toward the witness, complied with his demand, and put the watch and chain on the bed where they lay for some time, until the defendant went over to the bed, picked up the watch and put it in his pocket.

The witness then commenced to argue and reason with the defendant about taking his property, and the defendant stated that he was going to keep it until he found out that the witness would not report him to the officers. About that time the pistol in defendant's hand was accidently discharged. The witness continued to remonstrate with the defendant about taking his watch and chain, and finally the defendant voluntarily returned them to the witness. This occurred just before the officers came and placed the defendant under arrest.

The officers testified that they went to the rooming house in response to a call from there; whether or not the defendant or those with him knew that a call had been sent to the police, it seems that they were expecting the officers, and one of the party threw the whisky out of the window just before the officers got into the room.

The defendant, testifying in his own behalf, was to some extent corroborated by the state's witness Roberts. Defend-

ant stated that he had engaged room No. 9 at the Cardinal Rooms about 12 o'clock that day, and that he and a Mr. Nolan and an Indian by the name of Goodtraveler were drinking whisky in this room; that after a while they invited Mr. Roberts into the room, being then under the impression that they had met Roberts earlier in the day—it later developed that it was a case of mistaken identity, and that in fact they had never seen Roberts before the time he was invited into the room; that after he came in defendant closed the door and invited Roberts to have a drink, but that Roberts refused; that defendant had about a pint of whisky in a jug and that he asked Roberts to pour it into some small bottles; that Roberts said he did not care to do this, but that defendant told him he was pretty nervous and shaky and repeated the request, and that witness then poured the whisky as directed. Defendant denied that he compelled witness to do this at the point of a gun; defendant admitted that he had a gun in the room; defendant denied that he ordered the witness to throw his watch and chain on the bed and denied that he took the watch and chain. Defendant said that he went to the dresser, from which he took the gun, and that he was swinging the gun around in the room, but not pointing it at any person in particular, when it was accidentally discharged. In the main defendant's testimony was corroborated by the testimony of Goodtraveler. Further details of the conflict in the testimony of the state and that of the defense need not be recited. Enough has been said to illustrate the points raised in this appeal.

The defendant claims that the trial court was without jurisdiction to put him on trial for this offense, because he was not accorded a preliminary examination in accordance with the Constitution and the laws of this state.

The preliminary examination, or purported preliminary examination, as the case may be, was held before Enloe V.

Vernor, acting as "ex officio city judge of the city court of Muskogee, Okla." This court was organized and existing under the provisions of chapter 113, Session Laws 1917, as amended by chapter 157, Session Laws 1919. The act creating this court and the amendments thereto provided for a city judge having civil and criminal jurisdiction, and provided, among other things, that the judge of this court should have the same jurisdiction as justices of the peace do in this state, in addition to the jurisdiction specifically conferred by the act. In section 12 of the original act it is provided that the judge of this court may be disqualified and a special judge selected under the same terms and conditions as are provided by law for courts of record.

When this case came up on preliminary hearing before Charles Wheeler, the regular city judge, he announced publicly that he had been an assistant county attorney and had assisted in prosecuting one of the defendant's companions in a case arising out of some of the circumstances at issue here, and that he felt, in justice to all parties, that he should disqualify, which he did at that time. It appears that Enloe V. Vernor was the county judge of Muskogee county, and, at the suggestion of Judge Wheeler, Judge Vernor was called to hold this preliminary hearing. At this hearing both the state and the defendant introduced testimony, and Vernor, as ex officio city judge, held the defendant to the district court on this charge. The certificate to the transcript of the preliminary proceedings is signed, "Enloe V. Vernor, County Judge and ex officio Judge of the City Court of Muskogee."

At the time of the preliminary trial the defendant made no objections to the proceedings had, as above outlined, but before going to trial in the district court the defendant objected to being put upon trial because, as he alleged, he had

had no preliminary examination as provided by law. This was set out in his motion to quash the information and also raised by demurrer to the information. In both instances it was claimed by defendant that Judge Vernor was not a judge, ex officio or otherwise, of the city court of Muskogee, and that the purported preliminary examination was a nullity.

In this connection it is urged that the statutes creating the municipal court of Muskogee are unconstitutional and void. Since the act and amendments thereto creating this court have been 'repealed it would serve no good purpose to go into an extended analysis of the question of the constitutionality of this act. It requires no argument to establish the fact that it is within the power of the Legislature to create courts other than those designated in the Constitution, inferior to the Supreme Court, and to define their jurisdiction, and when the Legislature established a court having like jurisdiction with justices of the peace, who have jurisdiction as examining magistrates, they had authority to do so. It may be that some of the other provisions of the act were unconstitutional, but this would not necessarily impair the primary jurisdiction of the court, including the right of the court to sit as an examining magistrate. We hold, then, that this court had jurisdiction to conduct a preliminary hearing, and the presumption is that a judge acting ex officio is acting with due authority. This court will assume that, where a special judge acts judicially without objection from either party, his selection has been agreed upon by the parties and that his qualifications are sufficient. The objection that the examining court was without authority to hold a preliminary examination, as contemplated by law, will not be sustained.

The defendant seriously urges that the verdict is not supported by sufficient testimony and that the issues of law raised by the testimony were not properly submitted to the jury.

The injured party, Roberts, the person alleged to have been robbed (who in fact was not injured financially because the property was returned to him voluntarily soon after it was taken), was not the prosecuting witness in this case. Roberts seems to have been a more or less indifferent bystander. Under his testimony, and that of defendant and his companions, the issue of fact as to the motive of the defendant is rather obscure. Whether it was the intention of the defendant to permanently deprive Roberts of this property or whether it was merely his plan to detain the witness or deter him from informing the officers that the defendant was in the illegal possession of intoxicating liquor was an issue of fact submitted to the jury by the court, in the first instance, in the following instruction:

"You are further instructed that the defendant in this case is charged with the crime of robbery in the first degree, and in this connection you are instructed that robbery is the wrongful taking of personal property in the possession of another from his person or immediate presence and against his will, and must be accomplished by means of force or fear. The force or fear must be employed either to obtain the possession or to retain the possession of the property, or to prevent or overcome resistance to the taking. If the force or putting in fear is employed merely as a means of escape, it does not constitute robbery. When force is employed to obtain or retain the possession of the property, the degree of force employed is immaterial. When fear is employed as a means of obtaining or retaining the possession of the property, it must be the fear of an unlawful injury, immediate or future, to the person or the property of the person robbed or of any relative of his, or member of his family; or

the fear of an immediate and unlawful injury to the person or property of any one in the company of the person robbed, at the time of the robbery. If the property is taken under the circumstances required to constitute robbery, the fact that the property is of trifling value does not qualify the offense.''

Defendant claims that if the property was taken it was done for the purpose of protecting the defendant against arrest by detaining the witness, so as to prevent his informing the officers, and not done for the purpose of depriving the witness of his property. The only reference made to this issue in the original instructions is as shown above.

It would have been better for the trial court to have explained this issue more specifically. At any rate, the instruction given was not sufficient to satisfy the jury, as will presently appear. After the jury had deliberated for some time they were returned into court and at this point the record discloses the following proceedings:

''By the Court: Have you reached a verdict?

''By a Juror: We have not.

''By the Court: What—

''By a Juror: May we ask a question?

''By the Court: You may ask such question as you wish to ask.

''By a Juror: Judge, there seems to be a question about the word 'intent' in that last written instruction there— what connection it bears to the first part of the instruction.

''By the Court (reading from instruction No. 5): 'You are further instructed that if you find from the evidence in this case beyond a reasonable doubt that the defendant did within the county of Muskogee, Okla., on or about the 4th day of December, 1920, or within three years before the presentment of the charge in this case, wrongfully, willfully,

unlawfully, and feloniously put the said Guy Roberts in fear of immediate injury to his life or person by threatening to shoot the said Guy Roberts, or by pointing a pistol at the said Guy Roberts, and that by putting the said Guy Roberts in such fear the said defendant did unlawfully, wrongfully, and feloniously take from the said Guy Roberts any personal property then in the possession of the said Guy Roberts with the intention on the part of him (the said defendant) to unlawfully, wrongfully, and feloniously rob and deprive the said Guy Roberts of his said property and convert the same to his own use'—now, if you find those facts to be true then you should find the defendant guilty. Then, I further instruct you that the fact that the property was given back afterwards has nothing to do with the commission of the crime, except that you may consider that in determining whether the defendant did do the things that I have just read to you in this instruction—in other words, to help you to ascertain whether the facts which are referred to in the instruction just read actually took place or not, and has nothing else to do with the case. In other words, it didn't make any difference whether the property was given back or kept, if it was taken by putting one from whom it was taken in fear of his—

"By a Juror: The mere fact that it was taken—whether the intention was for the purpose of robbery or not—has no connection with it?

"By the Court: No; if he took it with the intention on the part of him (the said defendant)—if he took it with the intention to unlawfully, wrongfully, and feloniously rob and deprive the said Guy Roberts of the property, then the crime has been committed.

"By a Juror: Whether he expected to keep it or not?

"By the Court: Yes; whether he expected to keep it or not—it didn't make any difference—or rather, if he took it with the expectation of appropriating it to his own use, whether he afterwards made up his mind to give it back or not, is a proper statement of the case. Now, gentlemen, I am going to let you go back to your jury room."

The jury again retired and were unable to agree upon a verdict, and were again returned into court, where the following colloquy took place:

"By the Court: Do you agree the jurors are all present?

"By Mr. Davidson: Yes.

"By the Court: Have you reached a verdict, gentlemen?

"By a Juror: We have not.

"By the Court: The bailiff tells me you report one of your men is sick?

"By a Juror: Judge, I would like to be instructed a little further.

"By the Court: Upon what point?

"By a Juror: I have a right to ask it?

"By the Court: Yes.

"By a Juror: Now, on your instructions you say that in case—now, if I believe—I am going to ask this question: If I believe that Milam forced Roberts to put that pistol—I mean that watch and chain—on the bed and later took it and put it in his pocket, as I understand Mr. Roberts' statement is, now, he says, I believe you are the law—I will hold these until you decide not to turn us in, now, under that what about the reasonable doubt as to Roberts; that is, what about the reasonable—what I would like to be instructed on, if he was intending to intimidate only, have I a right to return a verdict for conviction?

"By the Court: I don't understand what you mean—I don't gather your idea.

"By the Juror: Well, this way—I will put it different. If I believe from the evidence in the case, two against one, but if I discredit two and believe one, put it this way, if I believe that he was forced to put this jewelry on the bed and put it in his pocket; he states, I take this for a purpose—

"By the Court: The witness didn't, as I remember the evidence, state that statement was made until later.

"By the Juror: Well, in that case, I believe—that is the point I want instructions on. Mr. Roberts insisted he stated—that he stated that you are the law and I will hold this; the question is, holding this, you won't turn me in—

"By the Court: Well, there is no evidence that that statement was made at the time the property was taken, neither was there any evidence that that statement was made before the property was taken.

"By the Juror: Under that charge then, in that case if I believe that then, I would not have any reasonable doubt then, would I?

"By the Court: Perhaps I can help you by calling your attention to one of the instructions on what Roberts states—you will find one instruction reading as follows: 'You are further instructed that the defendant in this case is charged with the crime of robbery in the first degree, and in this connection you are instructed that robbery is the wrongful taking of personal property in the possession of another from his person or immediate presence and against his will, and must be accomplished by means of fear of force, and the force or fear must be empoyed either to obtain possession or to retain possession of the property, or to prevent or overcome resistance to the taking' —that is, to prevent or overcome the resistance of the one from whom it was taken. If the force or fear is employed merely as a means of escape, that is, of the one charged, it does not constitute robbery. When force or fear is employed to obtain or retain—to obtain or retain the possession of the property, the degree of force employed is immaterial. Now, there is no proof of force here; the proof in this case was that it was only fear, if any proof at all; it can't be based—a conviction can't be based upon force because there is no force shown. The evidence may show fear or it may not, that is for you to decide—when fear is employed as a means of obtaining or retaining the possession of the property it must be the fear of an unlawful in-

jury, immediate or future, to the person or the property of the person robbed, or to any relative of his, and that does not apply here because there is no proof in this case, that is from the person or the property—they only claim to be robbed. You are instructed that in connection with the above that in order to constitute robbery in the first degree it must be accomplished by the use of force or putting the person robbed in fear of some immediate injury to his own person. Now, I think if you will consider that instruction it will probably answer your question.

"By a Juror: Now, Judge, in that case—I want to ask you this question. I want to be instructed in that particular point —you instructed there, if you have a reasonable doubt, of course that is, if I do believe this man took this property—

"By the Court: I would rather that you would not go ahead with that statement because it would not be proper at this time, I don't believe. The putting one in fear as is applied to this case and using that fear as a means to obtain or retain possession of the property—

"By a Juror: Now, could I get that statement made by Mr. Roberts?

"By the Court: You want that read?

"By a Juror: Yes.

"By the Court: I think you can get that—the defendant objects to the evidence being read and I will sustain that objection. One of the jurors is sick. Are you seriously ill?

"By a Juror: If there is a chance of agreeing I will stay.

"By the Court: I am going to let you go back to your jury room and consider it further."

From the record as above shown, it appears that the court supplemented his written instructions by a number of oral instructions. These were of an indefinite nature, some of them being answers to questions propounded by the several jurors,

and some being in the nature of comments on the written instructions previously given. The questions propounded by the jurors indicate that they were confused about the issue of motive, and from the record we are inclined to believe that the issues were not clarified by what the court instructed orally. Further, it is contemplated by our statutes that instructions to the jury should be reduced to writing, unless this be waived by the parties, which was not done in this case. Section 2687, Comp. Stat. 1921, subd. 6. If it becomes necessary to give additional instructions to the jury after the original written instructions have been given, they should also be reduced to writing and properly numbered and filed, in the same manner as those originally given. Inman v. State, 22 Okla. Cr. 161, 210 Pac. 742; Bird v. State, 22 Okla. Cr. 263, 210 Pac. 925.

Since the question of motive is the only vital decisive question involved in this case, and since it is apparent that this issue was not properly submitted to the jury, this cause must be reversed and remanded for a new trial, and it is so ordered.

MATSON, P. J., concurs.

DOYLE, J., absent and not participating.