**Jerry Daniel SCAGGS, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13614.**

Court of Criminal Appeals of Oklahoma.

July 27, 1966.

Dennis J. Downing, Tulsa, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

In this case, the plaintiff in error, hereinafter referred to as defendant, was charged with the crime of shooting with intent to kill. He was tried before a jury, found guilty and sentenced to serve one year in the state penitentiary.

The record reveals the State's case, in summary, to be: two young men, who were citizens of Iceland and at the time this circumstance occurred were students attending the Spartan Aircraft School in Tulsa. On November 16, 1963 they were visiting a woman who lived in a house trailer, located on premises owned by the defendant. Defendant owned and operated the Ritz Trailer Court in Tulsa.

While the two young men were watching television, the defendant came to the trailer house to repair a broken window. When he looked into the bedroom, where the broken window was situated, he discovered the woman lying on the bed, apparently asleep from too much · whiskey. The defendant became involved in an argument with the young men, and insisted that they leave. The young men testified that during the argument the defendant threatened "to knock their heads off"; that one of them picked up ·a pan, and the other picked up a kitchen knife from the table. They stated further that the de-

fendant then said he was going to call the sheriff, and he left; but when he returned, he had a small pistol in his possession.

From this point on, the testimony commences to become more conflicting. The State's evidence attempted to show that the two men remained in the trailer house, waiting for the sheriff to arrive; that when the defendant returned he threatened them with the pistol, and one young man ran outside the trailer; that the defendant shot once at the other man, which shot grazed his head; and then the defendant came outside and ran the other young man around the trailer, shooting at him four or five times without hitting him. The man inside then emerged from the trailer and they both left.

The two young men testified that they became concerned about the welfare of the woman still sleeping in the trailer house, so they decided to return to wait there for the sheriff to arrive.

It is shown that when they returned, one of the men saw the defendant's feet under the trailer house, so he picked up a large rock. The other young man still had the kitchen knife he had taken from the kitchen table.

One witness stated that when the defendant discovered them, defendant proceeded toward him with the pistol admonishing him to drop the rock, when suddenly he fired at him and hit him. The State's evidence goes to show that the defendant confronted the other young man, who had the knife, and then shot him. The one fact which remains undisputed is, that both young men were shot with defendant's pistol.

The defendant's version of what transpired differs considerably from that of the complaining witnesses. He denies that he threatened the young men in the trailer house, but he does admit that they became involved in an argument. He stated that he left the trailer house and went to his house and called the sheriff. He stated further that before he returned to the

trailer house he put the .25 calibre automatic pistol in his pocket for protection. He said that when he returned to the trailer house, he asked the young men to leave before the sheriff arrived, so they wouldn't get into any trouble, but they refused.

He contends that during the discussion one of the men picked up a pan, and the other picked up a kitchen knife, and commenced to advance toward him. That he stepped back about four feet, and pulled out his pistol. He stated that at the time he pulled out the pistol both young men ran out of the trailer house, and that he remained inside for several minutes, after which he stepped outside to wait for the sheriff to arrive.

Defendant's story continues that when he was outside he looked down the road and saw the two men coming back toward the trailer house. He said one of them had a large rock, and the other still had the kitchen knife; that the one with the rock continued to advance toward him, while the other ducked behind a bush. He testified that as he backed away from the man with the rock, he told him to drop it, but the young man did not drop the rock, but continued to advance toward defendant. He contends that he withdrew several steps before he shot at the man, which shot hit him. He said he then turned toward the other young man, who had the knife, and told him to drop the knife. That the young man did not drop it, but instead continued to advance toward him in a crouched position.

Defendant contends that while the man was advancing toward him, he continued to back away from him; that when he shot the first time he shot at the knife, but missed it. He shot the second time and hit the young man. He stated further, that when the man fell he went over to him to determine whether or not he fell on the knife. He stated that at first the man refused to say anything to him, but finally told him that he had thrown the knife. The defendant then picked up the knife, and the rock, and waited for the sheriff to

arrive. During his testimony, the defendant said that he was sixty-two years old, and when he was confronted by the two young men he was scared, and that when he shot at them, he shot in self-defense.

The State's case is supported by the testimony of the two young men from Iceland, the doctor who treated them, and the police officials who conducted the investigation. To support his own testimony, the defendant offered the testimony of several relatives, and others who were in the vicinity when the shooting occurred. The State offered several witnesses in rebuttal, and the defendant likewise offered several witnesses on surrebuttal.

For his defense of "self-defense", the defendant relies on the provisions of Title 21, O.S.A. § 643, paragraph 3, which provides:

"To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases:

\*　　\*　　\*　　\*　　\*　　\*

"3. When committed either by the party about to be injured, or by any other person in his aid or defense, in preventing or attempting to prevent an offense against his person, or any trespass or other unlawful interference with real or personal property in his lawful possession; provided the force or violence used is not more than sufficient to prevent such offense."

Defendant's first proposition is stated in his brief as follows:

"That the trial court committed reversible error in failing and refusing to give defendant's requested instruction No. 1 and 2 and error of the court in giving instruction No. 4, said instructions pertaining to and covering the material issue raised by the defense."

In support of this proposition, defendant cites several authorities, but relies primarily on Townley v. State, Okl.Cr., 355 P.2d 420, and Moore v. State, 25 Okl.Cr. 118, 218 P. 1102.

We have carefully considered the court's instruction No. 4, and have compared it with the instruction found in the Townley case. We find the portion complained of by defendant to be identical with the Townley instruction, which was one of the reasons given as justification for the reversal of that case. The first paragraph of the instruction, of which the defendant complains, reads:

"You are instructed that the right of self-protection is given to every citizen but this right cannot be pleaded as a defense and relied upon for an acquittal by one who, himself, is the aggressor or by one who enters voluntarily into a difficulty armed with a deadly weapon no matter how great his danger or how imminent his peril may become during the course of the difficulty."

While discussing that identical paragraph in the instruction in Townley v. State, supra, this Court said:

."In this instruction the court assumed that the defendant was the aggressor \* \* \*."

As we compare the case at bar, with the facts in Townley, we find in a general sense at least, they are very similar. In this case, as in Townley, the defendant was relying upon the facts: that he was in a place where he had a right to be; that he was no longer the aggressor in the altercation, when the two young men returned to his trailer camp; and that when they returned to accost him, he acted in self-defense, insofar as one man was armed with a rock, and the other with a knife.

Discussing the defendant's right in the Townley case this Court said:

"Under the foregoing facts and the rule of Moore v. State, supra, and other cases, the defendant was entitled to have an instruction clearly defining the law as to whom, at the time of the shooting, was the aggressor. In fact, this went to the very heart of the matter, for if the jury, under proper instructions, found that the defendant had withdrawn

from the scene of the original assault or disturbance of the peace and was thereafter pursued in a spirit of vengeance by the victim, who renewed the difficulty, the defendant's right of self-defense was available to him, and the jury should have been so instructed."

In the instant case, the court did not give an instruction defining the word "aggressor". This failure may have been the cause for some of the jury's confusion.

If this identical instruction was found to be prejudicial to the defendant in Townley, wherein an instruction defining "aggressor" was given, then under these similar facts and circumstances it must be prejudicial to this defendant. One fact which is stated by both complaining witnesses, as well as the defendant was that the two young men left the trailer camp and then returned. Also, that the two men were actually shot after they returned and accosted the defendant.

One of the conclusive facts which the jury was required to determine was, "who was the aggressor in the altercation". In this case the court's instructions were not entirely clear, especially considering the failure to include a definition of the word "aggressor". This failure, coupled with the court's instruction as it was given, may have caused the jury to believe that the court considered the defendant to be the aggressor.

This Court held in Anderson v. State, 90 Okl.Cr. 1, 209 P.2d 721:

"Instructions should be clear, explicit, and free from ambiguities and contradictions; otherwise they may confuse and mislead the jury."

See also Price v. State, 1 Okl.Cr. 358, 98 P. 447.

There is little doubt in our minds that the jury suffered confusion when considering this matter. This is evident from the fact that the jury returned to the court room several times for further discussions with the court.

The rule is stated in 5A C.J.S. Appeal and Error § 1677, p. 707:

"In the giving of instructions, the same basic considerations prevail, so that if an error in an instruction is trivial or formal, or merely academic, or for any other reason could not or probably did not have any effect upon the verdict, the error will be regarded as nonprejudicial unless appellant affirmatively establishes the contrary. *However, erroneous instructions, which might and perhaps did influence the jury's deliberations and verdict, will be presumed to be prejudicial to appellant,* and the burden of proof rests on appellee to show affirmatively from the record that no prejudice resulted; and when an appellate court cannot determine from the record that a verdict was probably not influenced by an erroneous charge, *the judgment will be reversed."* (Emphasis added)

We are of the opinion the State has not affirmatively shown that no prejudice resulted from this instruction. This Court is also of the opinion that the learned judge was acting in good faith, when he gave his instruction; and that he did not believe he was causing any "assumption" toward either the guilt or the innocence of this defendant.

However, the presumption of prejudice was raised in defendant's motion for a new trial, which was overruled. Likewise, that presumption has again been raised on this appeal.

The record is quite clear that the jury was confused by the instruction on "self-defense". The jury returned to the court room; and after some discussion between the court and the jury foreman, the court asked the foreman, "What is the question concerning the self-defense instruction?" The foreman replied, "The legal aspect of self-defense, what constitutes self-defense, I think, is what some of them want." The court proceeded to give an oral clarification, to which the defendant objected, and saved his exception.

In Young v. State, Okl.Cr., 357 P.2d 562, which is cited by the Attorney General, the trial judge first re-read the instruction, and then offered further oral explanation. Such was not done in the instant case. In Bird v. State, 22 Okl.Cr. 263, 210 P. 925, cited by the Attorney General, the judge first asked if there was any objection to his providing answers to the jury's questions. None being offered, he proceeded to answer the questions. Such was not the case here.

■■■■ We have considered the other cases cited by the Attorney General concerning this matter of the oral instruction. We conclude that even though the oral instruction did not materially alter the written instruction, neither did it offer sufficient explanation to relieve the deficiencies.

In Fleming v. State, Okl.Cr., 401 P.2d 997 we held:

"Defendant has right to clear and affirmative instruction applicable to his defense, based upon hypothesis that defense is true, where it affects material issue in case."

See also Nelson v. State, Okl.Cr., 288 P.2d 429; and Holt v. State, Okl.Cr., 278 P.2d 855.

Defendant's second proposition, which includes his objections to the court's oral instruction already discussed, contends: the court's personal opinion of the law; mention of the expense involved in the trial; and that the jury was coerced into arriving at a verdict, all constituting reversible error.

■■■■ We do not agree with defendant's contention. The court's expression
■■■■
of his personal opinion was unnecessary and did not add to enlighten the jury, but in this case it was not reversible error. Nor was it error to state the known fact that this particular trial was expensive. It was merely a statement to impress the jury to put forth it's greatest effort to arrive at some conclusion. We considered at some length whether or not the jury was coerced, but arrived at the conclusion that it was not. See Highfill v. State, 26 Okl.Cr. 420, 224 P. 729; and others. Under ordinary circumstances, this complaint would not have offered so much concern. But insofar as this particular jury consisted of eight women and four men, certain problems were encountered. This was particularly significant since two of the women jurors had children left at home by themselves, and had to make special arrangements for them.

■■■■ Defendant's fourth proposition need not be discussed except to say that part referring to the suspended sentence is considered to be surplusage, and merely constitutes a recommendation to the court. Holman v. State, 97 Okl.Cr. 279, 262 P.2d 456; Bohot v. State, 89 Okl.Cr. 238, 206 P.2d 585.

We do not consider it necessary to discuss defendant's fourth and fifth propositions, for the reason that this case must be reversed, for the reasons stated with reference to the first proposition.

This case is therefore reversed and remanded to the district court of Tulsa County, with directions to grant defendant a new trial not inconsistent with the rules of law stated herein.

BUSSEY, P. J., and NIX, J., concur.