Dorthalene Willis WILLIAMS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-82-335.

Court of Criminal Appeals of Oklahoma.

July 29, 1983.

Rehearing Denied Sept. 20, 1983.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Dorthalene Willis Williams, hereinafter referred to as the appellant, was convicted before a jury in the District Court of Delaware County, Oklahoma, of Murder in the First Degree. She was sentenced to a term of life imprisonment, and appeals.

In the early morning hours of April 24, 1981, the appellant shot and killed Olen Sharp. She maintained at trial the killing was in self-defense.

The circumstances which led to Mr. Sharp's death at the hands of the appellant are as follows:

Meda Lively had become partially incapacitated from an automobile accident, and had hired both the appellant and the victim to work for her. Ms. Lively had been acquainted with the appellant for approximately six months prior to the incident in question. Ms. Lively had been acquainted with the victim for approximately two-and-one-half years prior to his death.

The victim was known to Ms. Lively to become hostile and violent whenever he drank. He had assaulted and physically abused Ms. Lively, and had damaged her property during the course of their relationship. These facts had been made known to the appellant prior to the event in question.

In the late evening hours of April 23, 1981, Ms. Lively and the victim were at Ms. Lively's home in Jay, Oklahoma. They had been drinking.

The appellant arrived at Ms. Lively's home at approximately midnight to do housework. Upon hearing the appellant's knock on the front door, the victim informed Ms. Lively that if the visitor were either Ms. Lively's brother or the appellant, he would kill that person.

Ms. Lively answered the door; greeted the appellant; and told the appellant she was glad to see her, because the victim was in a belligerent mood. Ms. Lively and the appellant engaged in a short conversation, and were soon joined by the victim. Thereafter, the victim returned to the bedroom to watch television.

The victim then demanded the two women prepare some chili. They made the chili, and took it to the bedroom. Ms. Lively remained to eat chili in the bedroom with the victim, and the appellant returned to the kitchen.

While still in the bedroom, the victim stated he wanted a glass of water. When Ms. Lively offered to get him one, he struck her in the face with his fist.

It is unclear from the record whether the appellant actually saw the victim strike Ms. Lively; nonetheless, she was in the vicinity of the bedroom immediately after it happened. The appellant told the victim to leave Ms. Lively alone. The victim then approached the appellant. The appellant backed into the bathroom, drew a .22 caliber pistol from her purse, and shot the victim through the heart.[1]

Ms. Lively immediately summoned the police. She then took the pistol from the appellant and hid it in her living room closet.

A Jay police officer arrived at Ms. Lively's home shortly thereafter. The appellant met him at the door, and informed him that the victim had shot himself. She then assisted the police officers in a search of Ms. Lively's home. Neither she nor Ms. Lively made mention of the hidden pistol. It was not recovered in the course of the search.

The appellant left Ms. Lively's home at approximately the same time the police officers did. She returned one hour later, and took the gun.

The appellant was formally questioned by the authorities concerning the matter in the late afternoon of April 24. The story she related was that the victim had shot himself. She was again interviewed on April 27. She first reiterated the story that the appellant had shot himself, but upon further interrogation, indicated that she had shot the victim in self defense.

The appellant further stated that she had borrowed the pistol used in the killing from Mr. Melvin Miller; and that upon removing the pistol from Ms. Lively's home, she hid it. Subsequent to her interrogation, she led

OSBI agents to the location where she had hidden the pistol. The pistol was recovered at that time.

Melvin Miller identified the pistol at trial as the one which he had owned for several years. He further testified that he last saw the pistol sitting in its holster on the dashboard of his unlocked pickup truck outside a bar called "The Nuggett" in Grove, Oklahoma, on the evening of April 23, 1981. Mr. Miller was arrested in an ABC raid of the Nugget that evening, and was forced to leave his pickup sitting in the parking lot. He did not notice the pistol was missing until the following Sunday (April 26). He could not remember whether he had loaned the pistol to the appellant.

One of Miller's companions testified that he had seen the appellant inside the Nuggett before it was raided that evening.

Lastly, evidence was adduced that the appellant had telephoned Ms. Lively sometime prior to her arrival at the Lively residence, and that she was encouraged by a friend not to go over there. The friend believed the appellant was liable to encounter a volatile situation, and so informed the appellant.

■ Three of the appellant's six allegations of error complain of the instructions given the jury. There is nothing in the record to indicate that the appellant objected to any of the instructions, or to the absence of any instructions, or that any alternate instructions were offered. Furthermore, the error now alleged was not presented to the trial court in the motion for new trial. These contentions were not properly preserved for appeal. *Stevenson v. State,* 637 P.2d 878 (Okl.Cr.1981).

We have examined the instructions given the jury individually and in their totality, and find that they clearly and accurately

---

1. An expert firearm and tool mark examiner, Mr. James R. Looney, testified his tests revealed the weapon used in the shooting left powder marks on a target at a maximum distance of three and one-half feet. The medical examiner, Dr. Robert Hemphill, testified he found unburned powder particles on the victim's body surrounding the entry wound of the bullet. It may thus be fairly inferred from the evidence that the victim was within three and one-half feet of the appellant at the time of the shooting.

reflect the applicable law.[2] We therefore disagree with the appellant's assertion that the instructions were fundamentally erroneous.

The appellant's third and fifth allegations of error are, respectively, that there was insufficient evidence to support the trial court's issuance of first degree murder instructions; and that the State failed to prove malice aforethought. Both issues go to the question of the appellant's premeditation.

█ We are convinced from a review of the transcript that sufficient evidence was adduced to justify the judge's instructions on murder in the first degree. There was evidence that the appellant knew the victim was potentially a violent person; that she had reason to suspect she was entering into a dangerous situation by going to Ms. Lively's house at midnight; that she deliberately armed herself, perhaps by theft, prior to going there; and the man she killed was unarmed. Further evidence demonstrated that the appellant lied to authorities about the victim's death several times before admitting she perpetrated it; and that she hid the gun in the country after failing to direct the police officers' attention to it on the morning of the shooting.

It is apparent that the above evidence was sufficient to allow the jury to infer the appellant had premeditated the crime. As this Court stated in *Clouse v. State*, 389 P.2d 1002 (Okl.Cr.1964) at 1006,

> The rule is well settled that if from all the facts and circumstances attending the killing the jury can reasonably and satisfactorily infer the existence of the premeditated design or intention to kill, they will be warranted in so doing.

See also, *Price v. State*, 541 P.2d 373 (Okl. Cr.1975).

The evidence in this case supports the giving of the instruction and the jury's verdict.

Lastly, we find the appellant's sixth assignment of error that the trial court erroneously prohibited evidence of the victim's prior assaults on Meda Lively, of which the appellant was aware; and that the trial court further erred in failing to instruct the jury concerning character evidence, totally devoid of merit.

█ Aside from the fact that the alleged error was not preserved in the motion for new trial (see *McDuffie v. State*, 651 P.2d 1055 (Okl.Cr.1982)), nor were any instructions objected to or requested (see, *Stevenson*, supra), we note that ample evidence concerning the victim's violent tendencies in general, and toward Ms. Lively specifically, was admitted. The fact that the appellant can produce one series of objections sustained by the trial court against the appellant in this regard does not mask the fact that such evidence was admitted throughout the trial, and that the appellant made extensive argument concerning the victim's violent propensities and her knowledge thereof during closing argument.

We are convinced from a reading of the record that the jury was well aware of the victim's violent propensities, and of the appellant's knowledge of them.

The judgment and sentence is AFFIRMED.

CORNISH, J., concurs.

BRETT, J., dissents.

BRETT, Judge, dissenting:

I respectfully dissent to this decision. I believe the court's instructions failed to provide the jury with a proper theory of appellant's self-defense which is fundamental. *Crossett v. State*, 96 Okl.Cr. 209, 252 P.2d 150, 163 (1952). The court's instructions were contradictory in that instruction number 10, stated appellant had a right to stand her ground, and then provided that she

2. See, *Pannell v. State*, 640 P.2d 568 (Okl.Cr. 1982); *Ruth v. State*, 581 P.2d 919 (Okl.Cr. 1978); *Price v. State*, 541 P.2d 373 (Okl.Cr. 1975). Furthermore, the jury was properly instructed concerning the burden of proof in this

case; the evidence did not warrant an instruction on the defense of others; and the instructions tracked the language of 21 O.S.1981, § 701.7.

should use all reasonable means to avoid such danger before injuring her attacker. See, *Neal v. State,* 597 P.2d 334 (Okl.Cr. 1979), *Scaggs v. State,* 417 P.2d 331 (Okl.Cr. 1966), and *Townley v. State,* 355 P.2d 420 (Okl.Cr.1960), wherein these same instructions were criticized.

The court's instruction number 11, caused the jury to assume that appellant was the aggressor contrary to all the testimony introduced by the State. The same instruction was criticized in *Scaggs,* supra, and *Townley,* supra. Likewise, the court's instruction number 14, left the jury to speculate that appellant had a duty to raise a reasonable doubt to show the theory of self-defense. The rule in this jurisdiction is that once the self-defense is established it is the duty of the State to prove beyond a reasonable doubt that the appellant was not acting in self-defense. Instruction 14, misled the jury.

Instruction number 9, did not completely encompass all the provisions contained in 21 O.S.1981, § 733. The State admitted that appellant was an employee of Meda Lively, but the instruction omitted the second provision of the Statute, "Homicide is also justifiable when committed by any person in either of the following cases: ... 2. When committed in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress ...." The Oklahoma Jury Instructions Commission defined "mistress" as "female employer."

The majority opinion passes over these assignments of error as having not been objected to. However, whenever the trial court's instructions fail to state the defendant's theory of defense, the error becomes fundamental and can be raised at anytime. I believe these complaints were properly placed before this Court and should be recognized.

Finally, I believe the State failed to prove malice aforethought as required by 21 O.S. 1981, § 701.7. The prosecution made it appear that just because appellant had in her possession a weapon that she took it to the scene only for the purpose of committing First Degree Murder. The theory of the State was just as consistent with appellant's theory of self-defense, as it was with First Degree Murder. The State's chief witness, Meda Lively, testified to the self-defense of appellant. But, the prosecutor lessened the testimony of his witness by persuasive argument following his theory alone. This Court held in *Townley v. State,* supra, that the fact that the defendant is armed unlawfully does not deprive him of the right to use the weapon in his necessary self-defense. There was absolutely no proof that appellant had bad feelings against the deceased. Proof did show that Meda Lively requested appellant to come to her house, because the victim was at her house, drunk and belligerent. Appellant did know of the propensities of the victim and therefore provided a means of self-defense. The fact that the shot was fired two and one half feet from the victim leads me to conclude that the act was done in self-defense. Therefore, I dissent to this decision.