Wayne KEITH, Appellant,

v.

STATE of Oklahoma, Appellee.

No. M-83-560.

Court of Criminal Appeals of Oklahoma.

Nov. 25, 1985.

Mary E. Bane, Oyler & Bane, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, Wayne Keith, was found guilty of Aggravated Assault and Battery, a misdemeanor, in Pottawatomie County District Court in Case No. CRM–83–141. The six person jury recommended the maximum punishment, one year in the County jail and a $500 fine; appellant was sentenced accordingly. He appeals.

In the afternoon of February 21, 1983, Randy Woder, the complaining witness, went with two men to a residence to pick up an A frame (a piece of equipment used to lift motors). A man that lived at the house had called Woder and asked him to come get the A frame. Shortly after Woder started loading it in the truck, appellant drove up to the house and forcibly tried to prevent Woder from taking it. Woder didn't fight back and after being hit several times by appellant he left.

Appellant does not claim he owned the A frame or that he lived at the house. The man who had made the call to Woder was there but did not intrude in the fight. Woder's wounds were superficial, and this altercation is not the subject of this offense. This evidence was offered, without objection, to explain the circumstances of the later fight that is the offense charged.

Woder lived with the Wes Potts family; even though there was no blood relationship, they treated him like a son. Woder called Mr. Potts and told him about the fight. Mr. Potts drove around looking for appellant to "find out what the problem was." When he found him they had a brief conversation of no apparent consequence. Potts encountered appellant again around 7:00 p.m. when he picked his wife up at work. Two witnesses, called by appellant, testified Potts was trying to arrange a meeting between appellant and Woder so

they could talk or fight undisturbed. Potts denied the implication he was encouraging a fight.

According to appellant, Woder drove by a location where he and several other people had congregated. He claimed Woder motioned to him to follow him which he did until Woder stopped on the shoulder on I-40. He thought Woder pulled over so the two of them could talk, and this was the meeting Potts had wanted to set up. Appellant claims he was alone and unarmed. As he approached, Woder sprayed him in the face with mace. He denies knowing what happened next, claiming he was blinded by the mace, but admits striking Woder with his fists.

Woder knew appellant was following him but claims he did not motion to him. He said he heard a loud pop sound and shortly after he pulled over and found his rear tire was flat. He thought it had been shot out by appellant. He was standing at the rear of his car with the can of mace when appellant, with his lights on high beam, pulled up. He claims appellant had two or more unidentified men with him. He admits he sprayed appellant with the mace, but claims it was self-defense. He believes he was hit in the leg and head with an instrument that felt like a baseball bat. He remembers very little after these blows except he was able to drive home in spite of the flat tire and his injuries.

Woder's injuries consisted of a severely broken leg, concussion, and multiple lacerations to his face. Appellant's injuries were mace burns to his face and eyes and minor facial lacerations.

Appellant's first and second assignments of error are objections to the trial judge interrogating the witnesses and appellant. The first witness called was a man that was present at the fight in the afternoon; at the close of his testimony the judge asked some questions for clarification. The first question was a lengthy reiteration of the witness' testimony. Had the same question been asked by one of the attorneys it would have been objectionable as a leading question. The judge then asked about a dozen similar questions. Appellant objected and asked for a mistrial. The judge denied the request and explained that he was confused and he was sure the jury was also.

Later in the trial the court again conducted its own interrogation of one of appellant's principle witnesses. The court asked, "You and the Defendant had made it up together, as I understand it, then, to follow Wooten [sic]—." The implication is the witness and appellant had offered perjured testimony. The court repeatedly referred to Woder as the "victim".

In referring to the earlier fight the court took a similar stance when appellant was asked: "And you were the aggressor in that fight? You took the first steps against the victim, isn't that right?" Then there was a battery of questions by the judge regarding the crime charged:

Now, do you mean to tell this jury that a man injured to the extent that the victim was injured, badly scarred and mained—

MR. LYNAM: Your Honor, I've got to object to the Court's questioning—

Q. —that was all done with your fists? Is that what you're telling this jury, without any instrument, without any club, without any aid of any kind, you administered that type of injury to this victim with your fists?

A. I had no club, nothing in my hands at all.

Q. So, you disjointed and fractured his leg, put a—

MR. LYNAM: Your Honor, may I be heard on my objection?

Q. —a tremendous gash in his face; sent him—

MR. LYNAM: Your Honor—

Q. —to the hospital where he's since received therapy for some months, with your fists?

A. Yes, sir.

THE COURT: Very good. I wanted your statement in reference to that particular matter, because I couldn't believe it.

■ The State has cited numerous cases in defense of this assignment of error, none of which apply. In all of the cases cited one of the requirements is the court must "not indicate to the jury his views of the issues in contention." *Black v. State,* 664 P.2d 1054 (Okl.Cr.1983). In this case, there was no doubt the judge thought appellant and at least one of his witnesses were lying. The rule stated in *Landrigan v. State,* 700 P.2d 218, 220 (Okl.Cr.1985) is applicable:

> It has long been the rule of this jurisdiction that a trial court cannot indicate its opinion, either expressly or impliedly, intentionally or otherwise, as to the credibility of a witness. See *Winters v. State,* 545 P.2d 786 (Okl.Cr.1976), citing *Holcomb v. State,* 95 Okl.Cr. 55, 239 P.2d 806 (1952).

As in *Landrigan,* the court was clearly lined up on the side of Woder as evidenced by the reference to him as "the victim" although both appellant and Woder suffered injuries. The court exceeded the limits that are tolerated for interrogation of witnesses. *Caffey v. State,* 661 P.2d 897 (Okl.Cr.1983).

■ The State has claimed these errors were not preserved for appeal because appellant did not object. The appellant's objections were to ask for a mistrial, which were overruled. The judge may have been confused but this Court finds the testimony was no more obtuse than in most cases. The first time it happened the question posed by the judge was a concise and accurate statement of the preceding testimony which belies any confusion on his part. It was evident the judge knew the reason for the mistrial requests and under the circumstances that is the proper remedy for the errors. Appellant adequately protected the record for appeal. *Webb v. State,* 586 P.2d 78 (Okl.Cr.1978).

■ Appellant's third assignment of error is an objection to the prosecutor's closing argument. The prosecutor on three occasions improperly characterized the jury's function to be to "serve as the conscience of the community." On the first objection the judge not only overruled it but also scolded appellant's attorney for interrupting. The second time appellant's objection was again overruled, and the third comment was a continuation of the second one. This proposition is well taken; the judge was in error in permitting the prosecutor to continue unchecked with this line of argument. *Landrigan,* 700 P.2d 218; *Cooper v. State,* 584 P.2d 234 (Okl.Cr. 1978).

■ Appellant's fourth assignment of error questions the sufficiency of the evidence to prove the charge alleged in the information. In *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985), this Court recognized the test for sufficiency of the evidence that was set out in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) which is:

> Whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Notwithstanding the prejudicial errors committed at the trial, the jury could have found from the evidence, beyond a reasonable doubt, appellant was guilty of the crime charged.

In appellant's fifth assignment of error he objects to the instructions. In this case we have both combatants claiming self-defense. Woder admits he started the second altercation by spraying appellant in the face with mace. He claims, however, he was fearful because of the fight earlier in the day. He thought appellant had shot out his tire and that there were two or more people with appellant as he approached the car. The State brought the tire to court and it was admitted over appellant's objection. From the record this Court cannot determine if the tire was shot out or just blew out. Appellant denied any shooting and claims he was alone. The State's only evidence was Woder's testimony that there were other people with appellant.

·██ The court's instructions were inadequate for the facts and issues posed in this case. Appellant requested OUJI–CR–744 but the court denied the request and gave one it thought was similar.[1] The uniform instruction is a clear and concise instruction on the defense of self-defense. The instruction the court gave is not. There is not an adequate explanation why the uniform instruction was not given when it was requested. 12 O.S.1981, § 577.2.

██ The court also refused appellant's request for OUJI–CR–749 which defines "aggressor". It appears the court assumed appellant was the aggressor although Woder admitted he sprayed appellant with mace. Either party may have been the aggressor—clearly a jury question. In *Scaggs v. State*, 417 P.2d 331 (Okl.Cr.1966), the trial court, as in this case, failed to give instructions that encompassed the possibility the purported victim might be the aggressor even though he fared worse from the encounter than the defendant did.

In consideration of the accumulation of errors made in this trial, we find appellant did not have a fair trial and is therefore entitled to a new trial. REVERSED and REMANDED for a NEW TRIAL.

PARKS, P.J., concurs.

BUSSEY, J., concurs in result.

---

1. OUJI 744: Defendant's requested instruction No. 26:

   *DEFENDANT'S REQUESTED INSTRUCTION NO. 26*
   DEFENSE OF SELF–DEFENSE—JUSTIFIABLE USE OF NONDEADLY FORCE
   A person is justified in using force in self-defense if that person reasonably believed that use of force was necessary to protect himself/herself from imminent danger of bodily harm. Self-defense is a defense although the danger to personal security may not have been real, if a reasonable person, in the circumstances and from the viewpoint of the defendant, would reasonably have believed that he/she was in imminent danger of bodily harm. The amount of force used may not exceed the amount of force a reasonable person, in the circumstances and from the viewpoint of the defendant, would have used to prevent the bodily harm.
   Court's Instruction No. 26:
   No. 26
   You are instructed that to use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful when committed either by the party about to be injured, or by another person in his aid or defense, in preventing or attempting to prevent an offense against his person, or any trespass or other unlawful interference with real or personal property in his lawful possession; provided the force or violence used is not more than sufficient to prevent such offense.