## GENE ELMS v. STATE.

No. A-8288.   April 16, 1932.
(10 Pac. [2d] 728.)

Tom Williams, Glenn Williams, and C. E. Allen, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Tulsa county of murder and sentenced to life imprisonment in the state penitentiary.

The record discloses that just prior to the time of the homicide a burglary of a mercantile establishment had been committed at Gentry, Ark., and property stolen.   The police officers at Tulsa had been advised of this burglary, and defendant was suspected of having committed it. About dark, on the evening of the homicide, two plain

clothes police officers, James Wooley and one Walkley, went to the residence of a relative of defendant in West Tulsa and learned that defendant, with a companion by the name of Hodges, had gone a few blocks away to one Johnson's. The officers then went to Johnson's residence where defendant was seated in a car. He had just been attempting to sell some of the stolen property to Johnson. Hodges was out of the car. Wooley and Walkley got out of their car, asked some questions of Johnson, and defendant turned on his lights and started to back his car. Wooley and Walkley advanced on the car, and an exchange of some eight shots took place; three of them fired by defendant through the windshield of his car. One shot struck Wooley, resulting in his death. Defendant escaped and was apprehended at St. Paul, Minn. The testimony for the state is that defendant fired on the officers first and they did not fire until Wooley had been hit. Defendant contends he did not know that Wooley and Walkley were officers, but that they fired at him first and he returned the shots in self-defense. Except on this point, there is no material conflict. Defendant, 23 years of age, had twice been convicted of a felony, once in Arkansas and once in Missouri.

The first contention is that the evidence does not sustain the judgment. It is not necessary to discuss this claim, since there is ample testimony that defendant fired at the officers as they approached the car, and that the fatal wound was inflicted before the officers returned the fire. This question of fact was for the jury who saw and heard the witnesses and evidently believed the testimony of the state. This court has said many times it will not reverse a case on the weight of the evidence, where there is competent evidence from which the jury may reasonably and logically arrive at a verdict of guilty.

Complaint is next made that the trial court erred in giving certain oral instructions and in reading the statutes to the jury in answering its request for additional information. Upon this point it appears that, after the case had been submitted to the jury, and it had deliberated for some time, the jury came into court and said it had not arrived at a verdict and wished to ask the court a question, to which neither counsel for the state nor defendant objected. The foreman then asked two questions. The first, in substance, What the maximum punishment would be if the jury should find defendant guilty of manslaughter, and if defendant would be subject to parole and be allowed bail. The second question, Would defendant be subject to parole and to bail, if found guilty of murder and life imprisonment given? The county attorney objected and the court inquired of defendant's counsel and Mr. Glenn Williams, counsel for defendant, said:

"* * * I don't know whether we would object or not but I believe that legally the court would be without authority to give any further instructions. We do not care to object at this time but I do not believe it would be within the province of the court. * * *"

The court then stated to the jury, in substance, that these were matters upon which the court should not instruct and called their attention to a certain instruction as to the punishment. The foreman asked if they might have the statute, and the court answered, in substance, that the instructions were in conformity with the statute. Later on, the jury again came into court and stated they were unable to arrive at a verdict. The court then, in substance, asked if there was any assistance he could render, and was informed by some member of the jury, if he could answer the questions asked, it would help them. The foreman then stated that they understood the matter

of punishment. The court then mentioned the matter of parole and the right to bail, and stated he could answer if counsel agreed. Defendant's counsel said they would not agree. The county attorney said he was willing. Then defendant's counsel stated, if the state was willing, they were. The court asked him if this was correct, and he stated it was. The court then proceeded to answer the jury's questions, stating, in substance, that, if the punishment be anything less than life imprisonment, defendant would be entitled to bail; that in case of any judgment of imprisonment the court might parole the defendant at the time of sentence, or the Governor might parole after judgment. In this the court was very much in error. The court was wholly without power to parole in this case. Section 2803, Comp. Stat. 1921. The statement as to the power of the Governor was correct. Upon the statement of the court, the county attorney called his attention to the error, and the answer was finally corrected. Defendant's counsel took some part in the conversation and made no objections. Later in the day the jury came in and informed the court they had arrived at a verdict. Defendant's counsel then objected, saying·

"Comes now the defendant by his attorneys and objects to the receiving of the verdict in this cause for the reason that the jury has received information and opinions of law that were unauthorized and for the reason that at noon of this day the jury came in with certain questions written out that they desired to have answered by the court. * * * At that time the county attorney of Tulsa county objected to giving of information by the court and defendant's counsel stated that they did not believe it was— Mr. Glenn Williams: They did not care to object. Mr. Tom Williams: They did not believe it was authorized by law and it was not in accordance with law, but did not care to object. Later in the evening, perhaps half past five, the jury again returned with the same

questions and was asked by the court if they had arrived at a verdict, which they said they had not. They were then asked by the court if the court could assist them. The foreman of the jury responded that the court had failed us. The court then said that he could answer the questions if there was no objection. At that moment the county attorney of Tulsa county promptly stated that he had no objections and the defendant's attorneys were placed in a position of apparently not being willing. * * * The defendant's attorneys upon Mr. Coffey's giving consent were forced to, in their minds to also give their consent. * * *"

Some further conversation occurred, and the court explained his action and said, in substance, he had not yet received the verdict; that he might have been in error in some of his answers to the jury; that, if counsel thought his answer had been harmful, he would correct the matter then and correctly inform the jury and send them out. Defendant's counsel then said:

"Mr. Tom Williams: No, that is the reason we are objecting at this time, your honor. We put in this record that we consented, we had no objections, but we say we have no right to consent to those things to happen. * * * Your honor, the fact is, we feel that the defendant's rights have been jeopardized by the whole matter and we are not backing up on anything that we did. We have in this record that we consented at that time. The Court: Yes. Mr. Tom Williams: But we say in here that the attorneys cannot waive and consent to anything that would injure the defendant's case in a murder trial, and it is our duty to file this motion and ask that it be passed upon and that a mistrial be declared.

"The Court: Well now, gentlemen, I am not going to do that. If you want me to—if you want me to resubmit the question, to give them a different—to look my answer on the matter of parole, and let the jury go back

and consider it, I might do that. That is all I am going to do. * * *"

No exception was taken to this statement of the court who thereupon read to the jury sections 2803 and 2804, Comp. Stat. 1921, and again sent them out. Defendant's counsel objected as follows:

"Mr. Tom Williams: The defendant objects and excepts to the oral statement to the jury made by the court, and the reading of the statute to the jury at this time."

When the jury returned, defendant's counsel again objected to receiving the verdict.

We disapprove the giving of instructions or explanations or the answering of questions which amount to an instruction in felony cases except in writing. The statute directs that instructions be in writing, and this should be observed. Section 2687, Comp. Stat. 1921. Though the statute requires instructions to be in writing, written instructions may be waived by consent or by failing to except to an oral charge when given. Rea v. State, 3 Okla. Cr. 281, 105 Pac. 386, 106 Pac. 982; Bird v. State, 22 Okla. Cr. 263, 210 Pac. 925; Childs v. State, 24 Okla. Cr. 142, 216 Pac. 487; Milam v. State, 24 Okla. Cr. 247, 218 Pac. 168.

Counsel may not give consent that the court answer a question of the jury, amounting to an instruction, and then have the verdict rejected because the court did answer the question. When the jury came in with its verdict, and it was brought to the attention of the court that there was error in his oral answer to the question of the jury, it was the duty of the court to correct such error and to allow the jury to reconsider its verdict. 16 C. J. 1055, § 2496, N. 10, 11.

Upon a consideration of the whole case, we are satisfied defendant had a fair trial; that his guilt has been clearly established, and such errors as appear in the record are not materially prejudicial.

The case is affirmed.

DAVENPORT, P. J., and CHAPPELL, J., concur.