# MENEFEE v. STATE.

No. A-11768. July 22, 1953.

(260 P. 2d 413.)

Wilson & Wilson, Frederick, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error, Exolonia Menefree, defendant below, was charged by information in the county court of Tillman county, Oklahoma, with the offense of unlawful possession of intoxicating liquor, to wit, 7 half pints and 3 pints of tax paid whiskey with the unlawful intent to barter, sell, give away or otherwise furnish the same to others. She was tried by a jury, found guilty, her punishment fixed at a fine of $75 and a term of 75 days in the county jail; judgment and sentence entered accordingly, from which this appeal has been perfected. We are compelled to consider this case without the aid of a brief by the state, since it has filed none.

The evidence herein is briefly substantially as follows: Logan Spain, city marshal of Frederick, Tillman county, testified that he had noticed quite a few people going in and out of the house occupied by the defendant. He obtained a search warrant and went to the house together with Mr. Virgil Bright. There they found the defendant and served the search warrant upon her. It is admitted that the defendant was the occupant and in possession of the premises searched. She was asked, when the search warrant was served upon her, if she had any whiskey. She replied that she "did not have a bit", stating to the officers "that the boys had a couple of half pints that morning but had drunk it". Officer Spain testified that he looked in an ice box and there he found 3 or 4 bottles of ginger ale and 7-Up. He related that after searching inside of the house thoroughly and finding nothing he proceeded to search outside of

the house. There was a wash tub hanging on the north end of the house. He related that he moved the tub and it felt heavy, so he just lifted it off the nail. It contained 7 half pints and 3 pints of taxpaid whiskey. The officer related that the defendant denied that it was hers and in the presence of the defendant he asked others present if it belonged to them, and their answers were that it did not. He related that there were four men in the house at the time of the search. He stated that one of them was Bill Coombs, Jr., that there were no other women in there besides Exolonia. One of these men left the premises during the search but 3 of them remained. Officer Virgil Bright, night chief of police in Frederick, corroborated the testimony of Officer Spain.

The defendant interposed a demurrer to the evidence which was overruled, and requested an instructed verdict which was likewise overruled. Thereafter the defendant offered Bill Hartwig who testified that he knew the defendant, and that she had worked for him and his wife for 2 years, and his daughter a Mrs. Tucker and Mrs. Fondern, and several others for years. He related that he was familiar with the fact that in 1947 some whiskey was found in the defendant's house, and he also testified that defendant pleaded guilty to said charge.

The defendant testified in behalf of herself she lived at the place where the raid was conducted. She testified that she was across the street visiting a neighbor when David White called her attention to the fact that she had company, that William Coombs, Jr., was there. She testified that Coombs lived in Wichita Falls, Texas, and he and two girls from Wichita and another boy named Frank were in the house when she got there. She admitted there was pop and 7-Up in her ice box but she accounted for the ginger ale and 7-Up on the basis that the boys bought some, that they drank it all the time. She related Bill Coombs, Jr., who left while the search was being conducted, ran off without his keys to his car. Later he got another boy to bring his keys to him in Wichita Falls, and he came back and got his car. Exolonia testified that the whiskey belonged to some of the other parties at her house. She testified it was not hers. She said that Coombs contacted her one time and asked her what she was doing about this case and to let him know and he would pay her lawyer's fees; that she hadn't seen him since. She admitted two prior convictions against her for liquor law violations.

David White testified that he lived at Frederick, that on Saturday night the day before the raid was made and the whiskey discovered at Exolonia Menefee's house he saw Bill Coombs, Jr., sell some whiskey to some other parties. He related that he was in Coombs' automobile and that he saw Coombs dispensing whiskey out of a box in the car and that the brand of whiskey was the same as introduced in evidence, that is, it looked like the same one he saw Coombs sell. In response to the question, "Did he sell you any?", his reply was, "No sir, I don't drink it". On cross-examination he admitted that he had never seen the box that was offered in evidence, which contained the whiskey, and which the officer related he found in the wash tub hanging on the back of the house. He testified that Coombs would reach down under the convertible top and bring the whiskey out of what he knew was a paper bag or box or something. It was developed on cross-examination that he was on a suspended sentence for 18 months for embezzlement of a shotgun.

J. H. Williams testified that on the night before the raid made at Exolonia's house he was with Bill Coombs, Jr., and David White whom he identified in the courtroom. He related that he got together with White and White asked him, "Do you have a drink", to which he said, "No, but I will get some", whereupon he asked Coombs if he knew where he could get it, and the reply was that he

had some and so, Williams testified, he bought a pint. Then he testified that, "We drank a little while and left there about 2:00 or 2:30". He related that was all the whiskey that he bought from the boys from Wichita. On cross-examination he could not remember what brand of whiskey it was he bought. He didn't go to Exolonia's house that night of, nor Sunday the day before the raid. The inconsistencies and contradictions in the testimony of White and Williams tend to neutralize its value. It is fundamental that a witness may be discredited by inconsistencies and contradictions in his testimony. 70 C.J. 782, § 963, n. 12, 13.

The defendant complains that after having offered herself as a witness the state was permitted to examine her as to two previous convictions of the liquor law. The defendant admits the court properly instructed the jury that her testimony concerning these convictions was only for the purpose of affecting her credibility as a witness. The defendant concedes that this court has consistently held that when the defendant takes the stand it is proper to inquire about previous convictions for the purpose of affecting the witness' credibility. James v. State, 64 Okla. Cr. 174, 78 P. 2d 708; Byars v. State, 56 Okla. Cr. 349, 39 P. 2d 157, and other cases. The court having properly instructed the jury on this matter the point is therefore without merit, for we can only presume that the jury followed the court's instructions and considered the evidence only as going to the defendant's credibility.

It is true the evidence is conflicting but this court has repeatedly said:

"Where there is competent evidence in the record from which the jury could reasonable conclude that defendant was guilty as charged, Criminal Court of Appeals will not interfere with verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusicve province of the jury to weigh the evidence and determine the facts." Sadler v. State, 84 Okla. Cr. 97, 179 P. 2d 479.

And,

"In considering the sufficiency of the evidence, the function of this court is limited to ascertaining whether there is a basis in the evidence on which the jury can reasonably conclude that accused is guilty as charged." Roberts v. State, 82 Okla. Cr. 75, 166 P. 2d 111, 112.

We think the evidence is sufficient to sustain the finding of the jury. The defendant to sustain her position relies upon Ritter v. State, 84 Okla. Cr. 418, 183 P. 2d 257; Seay v. State, 93 Okla. Cr. 372, 228 P. 2d 665; McCarthy v. State, 86 Okla. Cr. 51, 189 P. 2d 436; Hill v. State, 76 Okla. Cr. 371, 137 P. 2d 261, 267. An examination of those cases will clearly disclose their inapplicability to the proposition under consideration. In those cases it was not established that the defendant was in possession and control of the premises upon which the liquor was found. In Hill v. State, supra, it was said:

"There should be some proof that the defendant was in possession of the intoxicating liquor found in the pasture or such circumstances from which it may be reasonably and logically inferred, such as proof of the ownership, or control of the land where it was found, * * *. The evidence fails to show that the pasture was in the possession or under the control of the defendant, or that the intoxicating liquor was hers, or that she had possession of the same. Mater v. State, 9 Okla. Cr. 380, 132 P. 383; Benson v. State, 10 Okla. Cr. 16, 133 P. 271, 274; Crowder v. State, 47 Okla. Cr. 197, 287 P. 739."

Here the defendant was in complete control and possession of the premises, and was also in complete control of the ice box where the ginger ale and 7-Up was kept, likewise the tub in which the liquor was found belonged to her. Moreover, suspicion was aroused before the raid was made by virtue of the fact

so many people were seen going in and out of her house. This record presented a question of conflicting evidence where the facts were clearly within the province of the jury to determine under proper instructions, which were given. The evidence is sufficient to sustain the jury's conclusions, and the judgment and sentence herein imposed is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.