**Norman Richard CLEARY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–93–197.

Court of Criminal Appeals of Oklahoma.

June 24, 1997.

Rehearing Denied Sept. 11, 1997.

Loretta Jackson, Sid Conway, and Denny Johnson, Assistant public Defenders, Tulsa, Defense Counsel at trial.

Johnie O'Neal, Public Defender, Tulsa, for Appellant on appeal.

David Moss, District Attorney and A.J. Schultz, Assistant District Attorney, Tulsa, Prosecutors at trial.

Susan B. Loving, Attorney General of Oklahoma and A. Diane Blalock, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

LANE, Judge.

Norman Richard Cleary was convicted of First Degree Murder in violation of 21 O.S. 1991, § 701.7, and First Degree Burglary After Former Conviction of Two Felonies in violation of 21 O.S.1991, § 1431 in Tulsa County District Court Case No. CF–91–5395, the Honorable B.R. Beasley presiding. Following the sentencing stage of trial the jury found four aggravating circumstances: (1) continuing threat, (2) avoiding arrest or prosecution, (3) prior felony conviction involving violence, and (4) murder committed while serving a term of imprisonment. The jury recommended a sentence of death for the murder and ninety-nine years imprisonment for the burglary.[1]

## FACTS

In the early afternoon of December 6, 1991 Norman Richard Cleary, Kenneth "KC" Chandler, and Jack Bell drove around Tulsa in Cleary's truck. Bell was looking for a job; Cleary and Chandler decided to burglarize a home. Bell wanted no part of the burglary and was dropped off at a shopping mall.

Cleary and Chandler drove through Maple Ridge and cased the neighborhood. They knocked on the door of two homes, and when the residents answered from upstairs windows, they asked for the address of a fictitious person. Housekeeper Wanda Neafus answered the door of the third home. The handgun Chandler was carrying slipped out from under his coat, and believing they had

been found out, the men pushed open the storm door and came into the house. They took Neafus to the basement where Cleary shot her five times in the face and neck. On their way out, they took Neafus' purse, and a cane with an eagle hand grip from the hall tree.

## JURY SELECTION

Five African–American veniremen were in the jury pool. Two were struck for cause without objection: one who could not consider the death penalty, and one who overheard a conversation between the bailiff and an attorney unrelated to the case about the strength of the evidence. Two African–American veniremen were struck by peremptory challenge without objection: one who gave conflicting responses to voir dire, and one who believed his son had been treated unfairly by the District Attorney's staff.

The last African–American venireman stated she had a number of friends and family "in the system," and she was studying criminal justice in order to help them. Citing a "social worker mentality," the prosecutor exercised a peremptory challenge. Defense counsel objected under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Cleary reiterates the *Batson* challenge in his second proposition of error, arguing the given reason was a mere pretext, for this venireman aligned herself with law enforcement when asked directly.

Under *Batson* and its progeny, the threshold prima facie case for a discriminatory strike is met by challenging a strike on racial or gender grounds. This is so, for the challenger may "rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate." *Id.* at 96, 106 S.Ct. at 1723 (citation omitted). The burden then shifts to the striking party to articulate a race-neutral or gender-neutral reason for the strike. The neutral reason should be accepted by the court if it is supported by the

---

1. Co-defendant Kenneth Chandler was tried separately and sentenced to life imprisonment. Judgment and sentence has been affirmed by unpublished opinion. (F–92–1234, Jan. 18, 1995).

record. A pretextual reason, that is, one not supported by the record, should be rejected. *See generally, Id.; J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 143–44, 114 S.Ct. 1419, 1429, 128 L.Ed.2d 89 (1994); *Georgia v. McCollum,* 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992); *Powers v. Ohio,* 499 U.S. 400, 416, 111 S.Ct. 1364, 1374, 113 L.Ed.2d 411 (1991). On appeal the trial court's finding is to be treated with "great deference." *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21.

We find no reason not to defer to the trial court in this decision for this race-neutral reason is supported by the record. *See Neill v. State,* 896 P.2d 537, 546 (Okl.Cr. 1994)(strike of teacher accepted as race-neutral).

### FIRST–STAGE EVIDENCE

The first evidentiary issue, raised in the third proposition of error, is whether the State presented sufficient evidence to prove two elements of the crime of burglary, "breaking" and the presence of a human being in the home. *See* 21 O.S.1991, § 1431. Appellant argues his statement that the storm door was closed and Neafus was in the house when he and Chandler came to the door is not sufficient proof for it is not corroborated.

■ We find three facts in the record which, when taken together, are corroborating: (1) Neafus was holding a kitchen towel when she was shot; (2) she had swept together a pile of debris at the top of the basement stairs, but had not removed it; and (3) it was her habit to keep a door closed when she worked. The jury could conclude from these facts Cleary and Chandler interrupted Neafus while she was working, and the door was closed. The evidence was sufficient to prove both the element of breaking and the presence of a person in the home.

Appellant also argues two letters were improperly admitted at trial. Cleary's girlfriend testified Cleary told her he had them written by someone in his cell and he mailed them to her. Defense counsel objected for lack of foundation since Cleary did not write the letters himself.

■ Appellant relies on *Schorr v. State,* 499 P.2d 450, 452–53 (Okl.Cr.1972), in which this Court held a letter written by the defendant's brother was not admissible against him because he had no control over its contents. The State counters that by sending the letters, Cleary tacitly approved and sponsored them. Appellant also relies on 12 O.S. 1991, § 2801(4)(b) (authorized statements are not hearsay) to argue these statements are *not* authorized and thus, are not admissible.

*Schorr* is not persuasive here, for by being in the position to send or not send the letter, Cleary had final control of its contents. Sending the letter also defeats the section 2801 argument, for sending implies authorization. The trial court properly admitted these exhibits.

The admission of State's Exhibit 22, a styrofoam wig head pierced with foot-long dowels showing the location and trajectory of the five shots fired into the victim's face and neck, is challenged in Appellant's ninth proposition. This exhibit was used in conjunction with the medical examiner's testimony. Cleary argues the prejudicial effect of this gruesome exhibit greatly outweighed any probative value it might have had.

■ The decision of the trial court to admit evidence will be upheld on appeal absent a clear abuse of discretion. *Hill v. State,* 898 P.2d 155, 164 (Okl.Cr.1995). If evidence is relevant and its probative value is not substantially outweighed by its danger of unfair prejudice, admission is proper. *See* 12 O.S.1991, § 2403. This exhibit was relevant to show the victim's injuries, injuries which the admitted photographs did not show clearly. And while memorable, the exhibit was not particularly gruesome. We find the trial court properly admitted the exhibit, for its probative value was not substantially outweighed by the danger of unfair prejudice.

Preliminary hearing testimony of Dolores Riffe, an absent witness, was admitted at trial pursuant to 12 O.S.1991, § 2804(B)(1) following an *in camera* hearing at which the trial court ruled Riffe was unavailable. Appellant argues in his tenth proposition this was error, for the State failed to exercise due diligence to locate her.

■ Previous testimony may be admitted at trial if two threshold requirements are satisfied: the witness must be unavailable despite good faith and due diligence of the party calling the witness, and the transcribed testimony must bear sufficient indicia of reliability to allow the trier of fact a satisfactory basis for evaluating its truth. *Davis v. State,* 753 P.2d 388, 391 (Okl.Cr.1988); *Funkhouser v. State,* 734 P.2d 815, 817 (Okl.Cr.), *cert. denied,* 484 U.S. 942, 108 S.Ct. 326, 98 L.Ed.2d 354 (1987).

■ Appellant hangs his argument on the fact the State did not issue a subpoena. The State relies on the many efforts taken short of a subpoena to secure the presence of this witness, and the fact she was not available at Chandler's trial some months earlier.

■ On appellate review we look to all the relevant facts of the case, and issuance of a subpoena is not the *sine qua non* of good faith and due diligence. *See Rogers v. State,* 721 P.2d 820, 823–24 (Okl.Cr.1986). Cleary stipulated to the following efforts by the State to locate Ms. Riffe: (1) prior to Chandler's trial the prosecutor and defense counsel tried to locate Riffe who was believed to be a migrant fruit picker; (2) informants advised a State investigator the witness was somewhere in Arkansas; (3) a drivers' license check was run without result; (4) a witness told investigators she believed Riffe was in Texas, and the investigators tried unsuccessfully to locate Riffe; (5) the Tulsa Police looked for Riffe unsuccessfully; and (6) the investigator followed all available leads. The trial court properly found these facts establish good faith and due diligence.

■ As to reliability, Riffe was cross-examined thoroughly in the preliminary hearing, and at trial her entire testimony, including cross-examination, was read to the jury. This testimony thus bore sufficient indicia of reliability, and gave the jury a sound basis for determining the credibility of the testimony. As each threshold requirement for admission was satisfied in this case, the trial court properly exercised its discretion by admitting the preliminary hearing testimony.

■ The trial court allowed the jury to take Cleary's video-taped confession, which had been admitted into evidence, with them into deliberations. Appellant challenges this ruling in his fourth proposition. It is well settled in this jurisdiction that video-taped confessions which have been admitted into evidence may be taken into the jury room during deliberations. *Banks v. State,* 810 P.2d 1286, 1292 (Okl.Cr.1991), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992). We find no reason to depart from this precedent.

## FIRST–STAGE INSTRUCTIONS

Cleary raises five challenges to the first-stage jury instructions. In his sixth proposition of error he argues the trial court erred by instructing the jury if it found him guilty of felony-murder it could not also find him guilty of the underlying felony, burglary. Defense counsel objected to the instruction on the grounds it was a misstatement of law. On appeal Cleary argues the instruction deprived him of his only defense, his claim that he did not pull the trigger.

■ The logic of this argument is not readily apparent. First, the instruction is a correct statement of law. *See Tibbs v. State,* 819 P.2d 1372, 1376 n. 5 (Okl.Cr.1991); *Castro v. State,* 745 P.2d 394, 405 (Okl.Cr.1987), *cert. denied,* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988). Second, the instruction focused the theory of defense. The jury's rejection of the defense can not be attributed to any deficiency in the instruction. There is no error here.

Appellant raises a two-pronged argument challenging the trial court's definition of "principal" in his fifth proposition. He argues (1) because the trial court did not define "criminal intent" as used in this instruction, the jury may have applied this lesser degree of intent to the malice aforethought instruction; and (2) the trial court failed to give OUJI–205 *sua sponte* which would have instructed the jury that merely standing by does not make someone a principal. This instruction was of critical importance to his defense, Appellant argues, for in his statement to police he said he did not know Chandler was going to shoot the victim and

he had already left the basement when Chandler shot her.

■ In trial context this argument is not persuasive. Criminal intent in the malice aforethought instruction was defined as the "deliberate intent to take a human life." Given this plain instruction, we find nothing in the record to overcome the legal presumption the jury followed the instructions of the trial court. *See; Menefee v. State,* 97 Okl.Cr. 149, 151, 260 P.2d 413, 415 (1953); *Jones v. State,* 764 P.2d 914, 917 (Okl.Cr.1988).

■ Appellant's position that the trial court should have given OUJI–CR 205 *sua sponte* is equally unavailing. This issue is raised for the first time on appeal and will be examined for plain error only. Jury instructions are sufficient if, as a whole, they properly instruct the jury. *Ashinsky v. State,* 780 P.2d 201, 205 (Okl.Cr.1989). The instructions in this case, when read in their entirety, properly instruct the jury on the applicable law. There is no plain error here.

In the sixth proposition Appellant alleges two trial court errors: (1) failure to instruct on the "breaking" element of burglary; and (2) failure to require the State to elect a theory of prosecution. The trial court instructed the jury with OUJI–CR 511 and 516 which set forth and define the elements of burglary. These instructions accurately define the elements required by 21 O.S.1991, § 1431. *Newsom v. State,* 763 P.2d 135, 140 (Okl.Cr.1988).

■ Appellant relies on *Hendricks v. State,* 698 P.2d 477, 480 (Okl.Cr.1985), *overruled on other grounds by Parker v. State,* 917 P.2d 980, 986 n. 4 (Okl.Cr.1996) which held OUJI–CR 511 is defective. The *Hendricks* decision, based on the unique fact that the defendant entered a home through an open door, is not relevant to this case. The language in *Hendricks* regarding the deficiency of OUJI–CR 511 was silently overruled by *Newsom,* and now is overruled expressly.

■ The second prong of the appellant's third proposition goes to the sufficiency of the evidence to support the jury's finding of the element of "breaking." Cleary admitted in his video-taped statement that when he came to the house the wooden front door was open, but the glass storm door was closed. His statement is not clear as to whether or not Ms. Neafus cracked open the door. However, it is clear that in order to gain entry, at the very least, he had to push the glass storm door farther open than it was. Cleary's statement is corroborated by the testimony of the home owner that it was Neafus' habit to keep the door closed, as well as the fact Neafus had swept up debris in the hallway, and was still holding a kitchen towel when she was found dead in the basement. This evidence is sufficient to support the element of breaking.

## DENIAL OF NEW TRIAL AFTER RECANTATION OF TESTIMONY

Cleary filed a motion for new trial after his former girlfriend, Corlea Corbell, who testified to three separate incriminating conversations with Cleary, recanted her testimony regarding one of the conversations. After trial and before sentencing, Corbell contacted the public defender's office and told an investigator and counsel that she had lied about the third conversation. The trial court denied the motion following a hearing which was held immediately prior to sentencing. In his sixth proposition Appellant argues this was reversible error.

■ The standard for evaluating whether witness recantation warrants relief has been expressed with slight variation as (1) whether the recantation would have changed the trial result, *Smith v. State,* 826 P.2d 615, 617 (Okl.Cr.), *cert. denied,* 506 U.S. 952, 113 S.Ct. 405, 121 L.Ed.2d 331 (1992); or (2) whether the recantation would have a probable effect on the verdict. *Hale v. State,* 807 P.2d 264, 268 (Okl.Cr.), *cert. denied,* 502 U.S. 902, 112 S.Ct. 280, 116 L.Ed.2d 231 (1991).

■ We examine the content of Corbell's testimony to determine the probable effect of the recantation. Corbell testified the first conversation with Cleary occurred at the Swingers club a few days after the murder. Corbell's sister Sally, who was Chandler's girlfriend, told Corbell that Chandler had

killed a woman. Corbell immediately took Cleary behind the bar and asked him "... what was going on?" He told her Sally's statement was true, but that Chandler had not "shot the lady," he had. He also told Corbell he shot the victim in the neck and head and gave the .22 hand gun to a friend named Mike.

The second conversation took place at the home of Corbell's mother and involved Corbell, Cleary and Chandler. Chandler explained how they approached the house and rang the doorbell. Cleary detailed the two prior stops and said he "shot the lady." The conversation came to an abrupt halt when Sally came in yelling she didn't want to hear any more about it.

Corbell testified she overheard the third conversation between Cleary and Chandler at the Fountains bar. Cleary made fun of Chandler and called him a "pussy" for running up the stairs when Cleary fired the shots.

At the hearing on the motion for new trial Corbell testified she did not hear the third conversation, but had been told about it by someone else. She also testified Cleary may not have told her that he killed the victim to avoid being identified, but she was confused, and he may well have told her that. Corbell adamantly maintained these were the only problems with her testimony.

Appellant relies heavily on *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), a case in which the prosecutor failed to disclose the criminal record of a stabbing victim which would have supported the accused's claim of self defense. *Agurs* has no application to this case, for the evidence recanted by Corbell was before the jury through the testimony of Delores Riffe, the witness who overheard the "third" conversation. Under these circumstances the trial court properly denied the motion for new trial.

### SENTENCING STAGE ISSUES

The jury unanimously found four aggravating circumstances: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; (2) the murder was committed to avoid arrest or prosecution; (3) the murder was committed while serving a sentence of imprisonment on conviction of a felony; and (4) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1991, § 701.12(1),(5),(6),(7). Cleary raises six challenges to these aggravators.

### 1. Constitutionality of "Prior Felony Conviction" and "Continuing Threat" Aggravators

■ Citing *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), which found the aggravator, "heinous, atrocious or cruel" to be unconstitutionally vague, Appellant argues the "prior felony conviction" aggravator is unconstitutionally vague on its face and requires a narrowing instruction. *See* 21 O.S.1991, § 701.12(1). An aggravating circumstance runs afoul of the Eighth Amendment if it does not channel the jury's discretion by clear and objective standards which provide a meaningful basis for distinguishing the few cases in which the death penalty is imposed from the many in which it is not. *See Cartwright*, 486 U.S. at 362, 108 S.Ct. at 1858; *Godfrey v. Georgia*, 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980); *Furman v. Georgia*, 408 U.S. 238, 313, 92 S.Ct. 2726, 2764, 33 L.Ed.2d 346 (1972).

■ Cursory comparison of the statutory language defining "prior violent felony conviction" and "heinous, atrocious or cruel" exposes the futility of this argument. *See* 21 O.S.1991, § 701.12(1) and (4). The statutory language of the "heinous, atrocious or cruel" aggravator failed to restrain the jury, for it could be applied to any murder. *Cartwright*, 486 U.S. at 363, 108 S.Ct. at 1859.[2] On the other hand, a jury may find the "prior violent

---

**2.** As is well known in this jurisdiction, this deficiency was corrected by the channeling instruction set forth in *Stouffer v. State*, 742 P.2d 562 (Okl.Cr.), *cert. denied*, 484 U.S. 1036, 108 S.Ct.

763, 98 L.Ed.2d 779 (1987) which limits this aggravator to those murders which are preceded by torture or serious physical abuse.

felony" aggravator only if the State proves beyond a reasonable doubt the defendant has been convicted of a felony involving the use or threat of violence to the person. *See* 21 O.S.1991, § 710.12(1). This finding, clearly subject to evidentiary proof and meaningful review, is constitutionally firm.

Appellant argues in his twenty-sixth proposition that the "continuing threat" aggravating factor is unconstitutionally applied in an arbitrary and capricious way. He acknowledges *Fox v. State,* 779 P.2d 562, 576 (Okl. Cr.), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990) settles the matter against him, but urges the Court to reconsider the issue. The Court has reconsidered the issue on numerous occasions, and consistently has found this aggravating circumstance to be applied in a principled manner which passes constitutional muster. *See e.g., Snow v. State,* 876 P.2d 291, 298 (Okl.Cr. 1994), *cert. denied* 513 U.S. 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995); *Malone v. State,* 876 P.2d 707, 715 (Okl.Cr.1994) (and cases cited therein).

### 2. Application of "While Serving a Sentence" Aggravator

Appellant argues in his fifteenth proposition that because he was on parole at the time of the murder, the following aggravating circumstance was misapplied to him:

The murder was committed by a person while serving a sentence of imprisonment on conviction of a felony. 21 O.S.1981, § 701.12(6).

The State disagrees, basing its argument on law pertaining to pre-parole release and escape. *See* 57 O.S.1991, § 365; 21 O.S.1991, § 443. Two problems surface immediately with the State's position. First, Cleary had been paroled, and was not on pre-parole release at the time of the murder. Second, the escape analysis is premised on the fact the escapee is "honor bound" to return to an institution for confinement, and Cleary had no such duty. *See Hunt v. State,* 793 P.2d 1366, 1368 (Okl.Cr.1990).

We begin our analysis with the definition of parole: a "significant restraint" on the liberty of the parolee who is subject to control of the parole board "under the cloud of an unexpired sentence." *Plotner v. State,* 721 P.2d 810, 811–12 (Okl.Cr.1986). A sentence which is unexpired obviously is being served. Hence, Cleary was serving a sentence and this aggravating circumstance was properly applied to him. We are satisfied this interpretation gives effect to the legislature's intent. Had the legislature wished to limit this aggravating circumstance to escaped prisoners only, it easily could have said so. This conclusion is consistent with our recent decision, *Cooper v. State,* 889 P.2d 293, 316 (Okl.Cr.1995) *reversed on other grounds, Cooper v. Oklahoma,* —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), in which we held the aggravator is applicable to a person who has been admitted to the Pre-Parole Conditional Supervision Program.

### 3. Jury Instruction

Without citation of authority Appellant argues in his eleventh and twenty-third propositions that because his culpability is "essentially equal" to that of Chandler, except for who shot and killed the victim, the trial court violated his right to due process by (1) failing to quash the bill of particulars; and (2) instructing the jury on the death penalty.

This perplexing argument appears to ignore the fact that when co-defendants are charged jointly, the issue of who did the killing is among the most important issues facing the jury as it determines punishment. *See Enmund v. Florida,* 458 U.S. 782, 797, 102 S.Ct. 3368, 3372, 73 L.Ed.2d 1140 (1982); *Williamson v. State,* 812 P.2d 384, 402 (Okl. Cr.), *corrected by,* 905 P.2d 1135 (Okl.Cr.), *overruled on other grounds by Fontenot v. State,* 881 P.2d 69, 77 (Okl.Cr.1994), *and cert. denied,* 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). This is precisely the jury decision necessary to a sentencing procedure which comports with the requirements of the Eighth Amendment. We find no merit in this argument.

In his twelfth proposition Appellant argues the trial court erred by failing to inform the jurors they need not be unanimous in finding mitigating circumstances. This argument consistently is rejected by this Court. *See McGregor v. State,* 885 P.2d 1366, 1384 (Okl.

Cr.1994); *Pickens v. State,* 850 P.2d 328, 340 (Okl.Cr.1993), *cert. denied,* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994); *Castro v. State,* 844 P.2d 159, 176 (Okl.Cr.1992), *cert. denied,* 510 U.S. 844, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993); *Clayton v. State,* 840 P.2d 18, 34 (Okl.Cr.1992), *cert. denied,* 507 U.S. 1008, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993); *Stiles v. State,* 829 P.2d 984, 997 (Okl.Cr. 1992).

■ Appellant also challenges the trial court denial of his requested *Enmund*[3] instruction in his twentieth proposition of error. This argument was rejected in *Cannon v. State,* 904 P.2d 89, 105 (Okl.Cr.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1272, 134 L.Ed.2d 219 (1996). *Cannon* is controlling, for like *Cannon,* the Appellant was convicted of malice aforethought murder. Therefore a "trigger man" instruction in the sentencing stage would be an improper revisiting of the question of degree of guilt which had already been resolved by the jury in the first stage of trial.

Appellant asserts in his twenty-first proposition the trial court improperly denied the following four requested instructions regarding mitigating circumstances:

1. That Cleary accepts responsibility for his participation in the crime;

2. That the State failed to disprove his environment as a child contributed significantly to his actions in this case;

3. That the State failed to disprove society would be adequately protected if the defendant was sentenced to life without parole; and

4. That Cleary had not received available treatment during previous incaceration.

On appeal this Court will not disturb the trial court's judgment if the jury instructions, taken as a whole, accurately state the applicable law. *Sellers v. State,* 809 P.2d 676, 685 (Okl.Cr.), *cert. denied,* 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991); *Ray v. State,* 762 P.2d 274, 278 (Okl.Cr.1988); *Pham v. State,* 752 P.2d 830, 832 (Okl.Cr.1988). We find no abuse of discretion here. The content of the first and fourth requested instruc-

tions was given by the trial court which instructed the jury Cleary had shown remorse, and he had not received available treatment in the juvenile system. The second and third requested instructions were properly denied, as they are not correct statements of law.

Appellant challenges the trial court's denial of six requested instructions in his twenty-second proposition. In requested instruction fourteen, the defense asked that the jury be instructed it need not make unanimous findings on mitigation evidence. This instruction has been rejected consistently by this Court. *Stiles,* 829 P.2d at 997; *Pickens,* 850 P.2d at 340.

In requested instruction twenty-two the Appellant wished to instruct the jury on the procedure of pardon and parole. This instruction is improper. *Id.* at 341; *Sellers,* 809 P.2d at 688.

■ Without citing any controlling authority the Appellant argues the trial court should have given requested instruction twenty-four to instruct the jury it could recommend any sentences to run consecutively. This, Appellant argues, would further protect society, and lessen any perceived need for the death penalty. This Court has made clear that the decision to run sentences concurrently or consecutively does not reside with the jury, but with the trial court. *Money v. State,* 700 P.2d 204, 207 (Okl.Cr.1985); *Lloyd v. State,* 654 P.2d 645, 647 (Okl.Cr. 1982). Denial of this instruction was proper.

The Appellant also requested the trial judge to instruct the jurors if they could not reach a verdict, the trial court would impose a life sentence. This instruction has been rejected consistently by this Court. *Boltz v. State,* 806 P.2d 1117, 1124–25 (Okl.Cr.), *cert. denied,* 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991); *Fox v. State,* 779 P.2d at 574; *Brogie v. State,* 695 P.2d 538, 547 (Okl. Cr.1985).

Appellant argues in his twenty-fourth proposition of error that the second-stage instructions violated the Eighth and Fourteenth Amendments of the federal Constitu-

**3.** *See Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

tion as well as Article II, sections 7 and 9 of the Oklahoma Constitution by *requiring* the jury to consider *aggravating circumstances,* but leaving the consideration of *mitigating circumstances* to its discretion.

■ A similar argument was rejected in *Pickens,* 850 P.2d at 339. In that case we explained the second stage instructions must be read as a whole to determine whether the jury was charged properly in its use of mitigation evidence. In the present case the jury was instructed, "The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case." The court then instructed the jury that evidence had been offered to support twenty-two listed mitigating circumstances. At the end of this list the court instructed, "Whether these circumstances existed, and whether this circumstance is mitigating, must be decided by you." These instructions, taken together, did not allow the jury to ignore mitigating evidence.

In his twenty-fifth proposition of error the Appellant continues his challenge of the jury's use of mitigating evidence. He argues the burden of proof is too low, for though the jury had to find each aggravating circumstance beyond a reasonable doubt, it could impose the death penalty if the aggravating factors merely outweighed the mitigating circumstances.

■ Appellant grounds his argument in the Eighth and Fourteenth Amendments of the federal Constitution, and Article II, sections 7 and 9 of the state Constitution. To find such a requirement in the federal constitution would expand its interpretation beyond that recognized by the Supreme Court. *See Zant v. Stephens,* 462 U.S. 862, 879–80, 103 S.Ct. 2733, 2743–44, 77 L.Ed.2d 235 (1983). When we examine the state constitution, likewise we find no requirement for balancing standards beyond that which is set forth in Title 21 O.S.1991, § 701.11. This Court has consistently rejected similar arguments. *Williamson,* 812 P.2d at 409–10; *Fox,* 779 P.2d at 573–74; *Walker v. State,* 723 P.2d 273, 284 (Okl.Cr.), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986).

When both sides had rested in the second stage, the trial court properly instructed the jury by reading each of the appropriate instructions. Written copies of these instructions were then given to the jury and taken into deliberations. Upon examination of the original record on appeal, Appellant's counsel discovered one of the instructions was missing. At oral argument counsel advised this Court that after discussions with the court reporter, he concluded, and the State concurred, the missing copy had been inadvertently omitted from the instructions submitted to the jury. This mistake went unnoticed, for the instructions retained by both counsel and the trial judge were complete. The question before us, raised by proposition twenty-seven in Appellant's Amended Brief, is whether this inadvertent omission requires vacation of the sentence and remand for resentencing.

The instruction at issue is OUJI–CR 440 which provides:

> If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances, the death penalty shall not be imposed.

Before addressing this issue, we note the question is *not* whether the jury was instructed accurately and completely. It was. The only question before us is whether the omission of a *written copy* of the instruction is fatal to the second-stage proceeding.

■ When we examine the issue as a matter of state criminal procedure, we find the method for instructing the jury is set forth in Title 22 O.S.1991, §§ 831(6) and 893. Section 831(6) provides the instructions shall be in writing. This mandate may, however, be affirmatively waived by the parties. *Swaggart v. Territory,* 6 Okl. 344, 346, 50 P. 96, 97 (1897); *Elms v. State,* 53 Okl.Cr. 268, 273, 10 P.2d 728, 730 (1932). This section is not dispositive, for the instructions in this case were written. It is section 893 which we find useful. This section provides:

On retiring for deliberation the jury may take with them the written instructions given by the court ...

22 O.S.1991, § 893. When this Court interpreted Section 893 we held:

The act of handing the written instructions to the jury, which had already been read to them, was not imperative or mandatory, but under the provisions of 22 O.S.1951, § 893, was permissive.

*Page v. State,* 332 P.2d 693, 695–96 (Okl.Cr. 1958). Under state statutory law, the omission of a written copy of the balancing instruction is not error.

■■■ This does not end our inquiry, for a criminal defendant has a due process interest in being sentenced both according to state law and by a process which facilitates the responsible and reliable exercise of sentencing discretion. *Caldwell v. Mississippi,* 472 U.S. 320, 329, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985); *Eddings v. Oklahoma,* 455 U.S. 104, 111, 102 S.Ct. 869, 874–75, 71 L.Ed.2d 1 (1982); *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980); *Lockett v. Ohio,* 438 U.S. 586, 598, 98 S.Ct. 2954, 2961, 57 L.Ed.2d 973 (1978); *Gardner v. Florida,* 430 U.S. 349, 353, 97 S.Ct. 1197, 1202, 51 L.Ed.2d 393 (1977). Because of the severity and finality of the death penalty, it is of utmost importance to the Appellant and to the citizens of Oklahoma that the decision to impose the death sentence is, and appears to be, based on reason rather than caprice or emotion. *See Salazar v. State,* 852 P.2d 729, 739 (Okl. Cr.1993); *Gardner v. Florida,* 430 U.S. at 358, 97 S.Ct. at 1204.

It is the practice in this State for the trial court to provide the jury with written copies of the jury instructions for the second stage of a murder trial, therefore, this is part of the process in Oklahoma to ensure a rational sentencing procedure. The failure to provide the jury with a written copy of OUJI–CR 440, though inadvertent, is error.

■■■ Having found error, we must determine whether the error is harmless. *See,* e.g., *Clemons v. Mississippi,* 494 U.S. 738, 741, 110 S.Ct. 1441, 1444, 108 L.Ed.2d 725 (1990)(overbroad second-stage instructions subject to harmless error analysis); *Carella v. California,* 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989)(instruction with erroneous conclusive presumption subject to harmless error analysis); *Pope v. Illinois,* 481 U.S. 497, 501, 107 S.Ct. 1918, 1921, 95 L.Ed.2d 439 (1987) (misinstruction of elements of offense subject to harmless error analysis). This error may be found harmless if we conclude beyond a reasonable doubt it did not affect the jury's decision to impose the death penalty. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■■■ We first note this error does not compromise the correctness of the instructions as a whole, for it was read to the jury. The instruction is not confusing on its face, or so complex it could not be remembered and applied. Instruction # 8 instructed the jury it could not impose the death penalty unless it found unanimously beyond a reasonable doubt that one or more aggravating circumstances existed. Instruction # 9 defined mitigating circumstances as those which "in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame." The trial court further instructed the determination of mitigating circumstances was for the jurors to resolve. Instruction # 10 listed twenty-two possible mitigating circumstances for the jury to consider.

Applying these facts, we conclude the omission of a written copy of the weighing instruction does not inject caprice or emotion into the sentencing. We also conclude it did not effect the jury's ability to responsibly and reliably impose the death sentence. We find this error to be harmless beyond a reasonable doubt.[4]

### 4. Second Stage Evidence

■■■ Appellant argues in his fourteenth proposition the State's introduction of trans-

---

4. Because we reach this issued on the merits, we do not address Appellant's twenty-eighth proposition in which he alleges ineffective assistance of appellate counsel for failure to raise the issue in the original brief in chief.

actional former convictions in the second stage of trial was error. This issue was settled in *Pickens,* 850 P.2d at 338. In that case the Court held the prohibition of the use of transactional former felonies set forth in *Miller v. State,* 675 P.2d 453, 455 (Okl.Cr. 1984) applies only to enhanced punishment in regular felony cases, and not to capital cases.

Continuing his evidentiary challenge, Appellant argues in the sixteenth proposition it was error for the trial court to allow the State to use the same evidence to support more than one aggravating circumstance. This position has been rejected consistently by the Court. *Smith v. State,* 819 P.2d 270, 278 (Okl.Cr.1991), *cert. denied,* 504 U.S. 959, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992); *Berget v. State,* 824 P.2d 364, 376–77 (Okl.Cr. 1991), *cert. denied,* 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992); *Pickens,* 850 P.2d at 336. Appellant presents nothing to compel reconsideration of the issue.

■ Sufficiency of the evidence to prove the aggravating circumstance, "[t]he murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution," is challenged in the seventeenth proposition. *See* 21 O.S.1991, § 701.12(5). Two elements are required for proof of this factor. The State must prove a predicate crime, and that the murder was committed by the accused in an attempt to avoid arrest or prosecution. *See Barnett v. State,* 853 P.2d 226, 233 (Okl.Cr.1993). This predicate offense need not, however, be charged and tried along with the murder. *See Id.* at n. 2 (kidnapping not charged); *Williamson,* 812 P.2d at 406–7 (rape not charged).

■ The State apparently concedes this aggravator was not proved as anticipated by the notice filed pursuant to Title 21 O.S.1991, § 701.10. Appellant argues in his eighteenth proposition that this insufficient notice warrants reversal. The State's notice indicated it would use testimony from Carlea Corbell and Cleary's parole officer to prove the aggravating circumstance. At trial, however, Corbell did not address the aggravator, and the parole officer merely testified a subsequent offense would affect Cleary's parole;

she did not say in what way parole would have been affected.

While the aggravator was not proven as anticipated, there was evidence presented to support it. This evidence was admitted in the first stage of trial and was incorporated into the sentencing stage. In such cases notice is not required. *Boyd v. State,* 839 P.2d 1363,1368 (Okl.Cr.1992), *cert. denied,* 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993); *Johnson v. State,* 731 P.2d 993, 1004 (Okl.Cr.), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987), *overruled in part on other grounds by Green v. State,* 862 P.2d 1271, 1273 (1993).

■ We look now to the sufficiency of this evidence to prove the murder was committed to avoid or prevent lawful arrest and prosecution. In his video-taped statement Cleary attributed two critical statements to Chandler. These statements are, "If someone sees us we have to pop 'em", and, immediately before the shooting, "She seen us, she seen us." These statements show Cleary was aware of the need to eliminate any witnesses. Applying the facts to the standard of proof, we find Cleary murdered the only witness to a burglary he had just committed. Evidence to support each element of this aggravator was presented in this case.

■ Appellant argues in his nineteenth proposition the introduction of evidence of a former first-degree burglary to prove future dangerousness is barred by *Berget,* 824 P.2d at 375. In that case the Court explained proper supporting evidence for this aggravator must indicate the likelihood of future violence. Cleary develops his position by relying on *Brewer v. State,* 650 P.2d 54, 63 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983) to argue the State must prove the violent nature of the prior conviction in order for the conviction to be relevant to future dangerousness. A former first-degree burglary would not be evidence of future violence, Appellant contends, for the people in the burglarized home may have been unaware of the burglary in progress.

Appellant's reliance on *Brewer* points out the fallacy of this argument. In *Brewer* the

Court addressed the factual basis required beyond the name of the crime to prove a different aggravating circumstance, former conviction of a violent crime. *Id.*; 21 O.S. 1981, § 701.12(1).

We decline to extend the teaching of *Brewer* to the future dangerousness aggravating circumstance, for determination of past violence and the likelihood of future dangerousness require the jury to focus on very different facts. A first degree burglary always carries with it the likelihood for a violent encounter with an occupant, and it is this likelihood which the jury must determine when it considers future dangerousness.

### 5. *Notice of Evidence to Support the Bill of Particulars*

■ In the eighteenth proposition Appellant challenges the sufficiency of the prosecutor's notice of evidence to be used to support the bill of particulars. Both constitutional and statutory provisions govern the notice which the prosecutor must furnish to defense counsel regarding the evidence which will be presented to support the death sentence. Oklahoma Constitution Article II, Section 20 provides in a capital case the accused shall be furnished with the names and post office addresses of witnesses who will be called in the State's case in chief at least two days before trial. Pursuant to 21 O.S.1981, § 701.10, "only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible." The scope of notice goes only to evidence which will be presented in addition to first-stage evidence which may be incorporated into the sentencing stage. *Johnson,* 731 P.2d at 1004.

■ Appellant does not challenge notice, *per se.* He was properly furnished both the list of witnesses with their addresses, and a *precis* of the evidence which would be used to prove the charged aggravating circumstances. Rather, he challenges the fact the *precis* did not, in all cases, indicate the name of the witness who would present that evidence. For example, evidence that he possessed a homemade knife and stabbed another inmate was to be introduced by a "Department of Corrections employee."

We do not reach the merits of this issue, for no objection on this ground was raised at trial and thus the issue is waived. *Williamson,* 812 P.2d at 408; *Roberts v. State,* 868 P.2d 712, 723 (Okl.Cr.), *cert. denied,* 513 U.S. 855, 115 S.Ct. 158, 130 L.Ed.2d 96 (1994).

### PROSECUTORIAL MISCONDUCT

The Appellant cites twenty-five instances of alleged prosecutorial misconduct in the twenty-third proposition. We will address only those comments in which we find error.

■ We first examine a group of statements for which the trial court sustained defense objection. This group includes discussion of the victim's right to live, shouting at Cleary's sister while questioning her, and a personal opinion of guilt. These errors are of the type which may be cured by the trial court sustaining the objection to them. *See Walker v. State,* 781 P.2d 838, 841 (Okl.Cr. 1989); *Pickens,* 850 P.2d at 341. We find these errors were cured.

■ One personal expression of guilt passed unchallenged when defense counsel's objection to part of the prosecutor's statement was overruled, but no objection was made to that part of the statement which contained the expression of guilt. Because all but plain error is waived by failure to lodge a contemporaneous objection, we first must determine whether this error is reviewable.

■ Plain error is that error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense. *Simpson v. State,* 876 P.2d 690, 695 (Okl.Cr.1994). We have recognized personal expression of guilt by the prosecutor impinges on a criminal defendant's right to a fair trial. *See Tart v. State,* 634 P.2d 750, 751 (1981). As the right to a fair trial flows from the Due Process Clause of the state and federal constitutions, it forms the very foundation on which the criminal trial must be based. *See* Okla. Const. Art. II, § 7; U.S. Const. Amend. 14; *Massey v. Moore,* 348 U.S. 105, 106, 75 S.Ct. 145, 147, 99 L.Ed. 135 (1954)(Fourteenth Amendment requires fair-

ness). Error which impinges on the fundamental fairness of trial is plain error.

 A finding of plain error is merely a threshold requirement for appellate review, for error which is plain may nevertheless be found harmless. *Simpson*, 876 P.2d at 698. In the present case, because the plain error is constitutional as well, we must determine if it is the kind of constitutional error which may be subjected to harmless error analysis. Only that constitutional error which does not create a structural defect tainting the entire trial may be found harmless. *See Bartell v. State*, 881 P.2d 92 (Okl.Cr.1994); *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The personal expression of guilt in this case was an isolated incident in closing argument, and as such did not create a structural defect which tainted the entire trial. Therefore it may be subjected to harmless error analysis.

In order for constitutional error to be deemed harmless, the Court must find beyond a reasonable doubt, that it did not contribute to the verdict. *Id.* at 24, 87 S.Ct. at 828. In this case the prosecutor's error was an isolated incident, the trial court had already sustained defense objection to a similar comment, and the evidence of guilt was overwhelming. Under these circumstances we find beyond a reasonable doubt the prosecutor's comment did not contribute to the verdict. This error is harmless.

 The prosecutor also made a misstatement of fact by stating Carlea Corbell testified that Cleary killed to prevent identification. Corbell did not testify to this, but Cleary's own statements support this conclusion. Therefore, the error in this comment, which passed without objection, is harmless beyond a reasonable doubt using the analysis just described.

 Thirteen years ago this Court disapproved of prosecutors stating the death penalty upholds the value of the life of the victim. *Tobler v. State*, 688 P.2d 350, 356 (Okl.Cr.1984). The prosecutor in this case made this comment. We find this kind of disregard of the proper and well established limits of prosecutorial comments very disturbing. We do not find *Tobler* requires reversal, however, for it was the combination of the many errors in *Tobler*, and not prosecutorial misconduct alone, which required reversal. Nevertheless, we admonish this and other prosecutors to educate themselves as to the limits of zealous prosecution so that they do not waste their county's resources and put their constituents through the trauma of retrial.

## MANDATORY SENTENCE REVIEW

The State Legislature has mandated that this Court review each capital case and determine (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances. 21 O.S.1991, § 701.13(C). We do so now.

 The record makes clear that no trial error caused passion, prejudice, or any other arbitrary factor to infect this trial. First-stage instructions were given correctly, and the jury returned a verdict of guilty. This verdict was amply supported by the record. The jury was properly instructed on four aggravating circumstances:

1. The defendant was previously convicted of a felony involving the use or treat (sic) of violence to the person;

2. The murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution;

3. The murder was committed by a person while serving a sentence of imprisonment for conviction of a felony; and

4. The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

The jury found all four aggravating circumstances, and the record contains sufficient evidence to support each finding. Mitigation included evidence of serious emotional and physical violence and abuse which Cleary endured as a child, early drug usage, and the fact Chandler received a life sentence for this crime. When we independently weigh the mitigating evidence against the aggravating

circumstances which were each proven beyond a reasonable doubt, we find the jury's determination that, beyond a reasonable doubt, the aggravating circumstances outweigh the mitigating circumstances is amply supported by the record.

Finding no error warranting reversal or modification, Judgment and Sentence of the District Court of Tulsa County is **AFFIRMED**.

CHAPEL, P.J., recused.

STRUBHAR, V.P.J., concurs.

JOHNSON and LUMPKIN, JJ., concur in results.

LUMPKIN, Judge, concurring in results:

I concur in the decision to affirm the judgment and sentence in this case. However, I write separately to address 2 issues—the statement that this Court has recognized personal expression of guilt by the prosecutor is an error of constitutional magnitude and the standard of review for plain error.

Under certain situations, a personal expression of guilt by the prosecutor, when considered in context of the entire trial, could rise to the level of a violation of due process. However such a comment is not by its very nature an *ipso facto* violation of due process. In *Tart v. State*, 634 P.2d 750 (Okl.Cr.1981), relied upon in the opinion, this Court held that a prosecutor is to refrain from giving his personal opinion as to the defendant's guilt. *Id.* at 751. To fail to do so is unprofessional conduct violative of the Code of Professional Responsibility. *Oklahoma Code of Professional Responsibility*, 5 O.S.1981, Ch. 1, App.3, and *The ABA Standards for Criminal Justice, The Prosecution Function*, Section 3–5.8(b)(1980). *Id.* at 751. The United States Supreme Court has also stated that the prosecutor, like defense counsel, must refrain from interjecting personal beliefs into the presentation of his case. *United States v. Young*, 470 U.S. 1, 18, 105 S.Ct. 1038, 1047–48, 84 L.Ed.2d 1, 14 (1985) citing to *ABA Model Code of Professional Responsibility*. However, neither this Court nor the Supreme Court have stated that a personal expression of guilt is an error of constitutional magnitude.

A comment by a prosecutor could possibly be so unduly prejudicial that it renders the trial fundamentally unfair, thus implicating the Due Process Clause of the Fourteenth Amendment, *see Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991), stating that "[a]lthough [victim impact evidence] does not violate the Eighth Amendment, evidence may be introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, thus implicating the Due Process Clause of the Fourteenth Amendment". That determination must be made based on the facts of each case on an individual basis.

In *Tart*, this Court recognized that the prosecutor's personal opinions of the defendant's guilt violated the rules of the *Oklahoma Code of Professional Responsibility* and *The ABA Standards for Criminal Justice, The Prosecution Function*. Comparing the improper comments against the weight of the evidence, which was not overwhelming, the Court found the jury could have given great weight to the prosecutor's statement and therefore reversal of Tart's conviction was required. This Court did not address the constitutionality of the error.

In the present case, the comment in question was not met with a contemporaneous objection. All but plain error is waived by the failure to lodge a contemporaneous objection, therefore we first determine whether this error is reviewable. Error which impinges on the fundamental fairness of trial, which was not raised previously, is plain error. *United States v. Young*, 470 U.S. at 15, 105 S.Ct. at 1046–1047, 84 L.Ed.2d at 12. *See also Simpson v. State*, 876 P.2d 690, 695 (Okl.Cr.1994). In *Young*, the Supreme Court held that a prosecutor's personal expression of guilt in closing argument, not met with a contemporaneous objection, may constitute error but not plain error if the comment is invited. 470 U.S. at 19, 105 S.Ct. at 1047. The Supreme Court further stated the plain error exception is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *Id.* 470 U.S. at 15, 105 S.Ct. at 1046 citing *Unit-

755

*ed States v. Frady*, 456 U.S. 152, 163, n. 14, 102 S.Ct. 1584, 1592, n. 14, 71 L.Ed.2d 816 (1982). Based upon a review of the facts in this case, any error which may have been committed cannot be determined to be plain error. The comment in question was not so prejudicial as to violate the Due Process Clause as it did not result in a miscarriage of justice or constitute a substantial violation of a constitutional right. The error has been waived and should not be reviewed.

Even if the error had not been waived, to properly apply the rule of law in this case, the Court could not review under the standard of "harmless beyond a reasonable doubt" which is reserved only for constitutional errors, but would only determine if the error had a "substantial influence" on the outcome, or leaves this Court in "grave doubt" as to whether it had such an effect. *Simpson*, 876 P.2d at 702. Under that correct standard of review, if the Court determined the error had not been waived, it would still find the prosecutor's comment harmless as the error reveals no "grave doubts" this failure had a "substantial influence" on the outcome of the trial.

I am authorized to state that Judge JOHNSON joins in this separate opinion.